J. HARVEY, Appellant, v. R. L. HENRY *et al.*

**Contract:** EVIDENCE. Machinery was purchased with notes secured by a mortgage on the machinery, and a year later the seller, as agent for another, sold the buyers other machinery, taking back in payment part of the machinery formerly sold, certain other machinery, and notes of the buyers, the sale being by written agreement, which stipulated for the taking of such notes and machinery. In an action on the notes and mortgage given for the first sale, the makers and a third person testified that, as an additional inducement for the sale, the payee, who had a special interest therein, had agreed, individually, to cancel and surrender them. The payee denied this, stating that the agreement was an exchange of the new property for the old, the difference in price being represented by the notes given by the makers. There was a dispute as to the price of the new machinery, and as to the credit to be given for the old; but, conceding defendant's testimony to be correct, the notes given and the credit allowed equalled the price, leaving no margin as a consideration for the surrender of the notes in suit. The mortgage to secure the notes was not canceled and the makers never asked to have it done, or to have the notes surrendered, but promised to pay if a discount were allowed. *Held*, insufficient to show an agreement by the payee to cancel the notes and the mortgage, since the makers had the burden.

**Parol Variance:** COLLATERAL CONTRACT. An agent's oral agreement, in making a sale in which he had a special interest, by written contract that, as an additional inducement, he will surrender certain notes held by him against the buyers, may be shown by parol in an action on such notes by the agent, though the written contract of sale, made in the name of the principal, was complete; since, as against the agent, the oral contract did not conflict with the written one, but was collateral thereto.

*Appeal from Van Buren District Court.*—HON. T. M. FEE, Judge.

SATURDAY, APRIL 8, 1899.

ACTION in equity to recover an amount alleged to be due on two promissory notes, and to foreclose a chattel mortgage given to secure their payment. There was a hearing on the

merits, and a decree for the defendants. The plaintiff appeals.
—*Reversed.*

*Wherry & Walker* for appellant.

No appearance for appellee.

ROBINSON, C. J.—In the year 1895 the defendants R.
L. Henry and Wesley Henry purchased of J. Harvey & Co.
an engine, tank, belt, weigher, and stacker, for the agreed
price of nine hundred and seventy-five dollars. In payment
the defendants gave their three promissory notes, of which
one for four hundred dollars was payable January 1, 1896,
one for four hundred dollars was payable January 1, 1897,
and one for one hundred and seventy-five dollars was payable
January 1, 1898. To secure the payment of the notes, the
defendants executed to the seller a mortgage on the property
purchased. The note which first became due has been paid.
This action is brought to recover the amount of the other two
notes, which the plaintiff claims to own by virtue of blank
indorsements, and to foreclose the mortgage. In the year
1896 the defendants purchased of the Nichols & Shepard
Company a traction engine, separator, with truck, wagon,
straw stacker, belts, and other appurtenances, and gave, as
part payment, the engine and certain appurtenances, and the
stacker, purchased the year before of J. Harvey & Co., and
a separator which the defendants had used several years, and
promissory notes for the aggregate amount of one thousand
six hundred and ninety dollars. The contract for the new
outfit was made through the plaintiff, as agent for the Nichols
& Shepard Company; and the defendants claim that the con-
tract price for the outfit was two thousand four hundred and
forty dollars, on which credit for four hundred dollars, for
the note to J. Harvey & Co. which had been paid, and three
hundred and fifty dollars for the old separator, were to be
given, and that the notes in suit were to be canceled, and with
the mortgage, were to be surrendered to the defendants. The
plaintiff avers that the contract price for the new outfit was
but two thousand two hundred and forty dollars, and that the

credit for the old engine, separator, and other property, was but five hundred and fifty dollars, and denies that the contract required the notes in suit to be canceled and surrendered.

I.    When the contract for the new outfit was entered into, the defendants signed an order for it, addressed to the Nichols & Shepard Company, which contained the following: "The undersigned agree to receive said machinery, * * * and pay in cash the freight and charges thereon from the factory, and also agree to pay to your order * * * the further sum of $——, as follows: Old steam outfit taken in trade at $550.00, including an Aultman & Taylor Separator; note due January 1st, 1897, for $300.00; note due January 1st, 1898, for $595.00; note due January 1st, 1899, for $595.00; and note due January 1st, 1900, for $200.00." The order does not contain any reference to the cancellation of the notes in suit, but the defendants contend that it was required by a verbal stipulation. That is denied by the plaintiff, and he contends that the order is apparently complete, free from ambiguity, and should be regarded as expressing the entire contract of the parties to the transaction. He insists, therefore, that it cannot be contradicted or varied by parol evidence. The general rule for which the appellant contends is well settled. Evidence of a contemporaneous oral agreement is not admissible to vary, add to, or contradict a valid agreement in writing which is clear, definite, and complete. *Fawkner v. Paper Co.*, 88 Iowa, 169, and authorities therein cited. But such evidence is admissible to show "the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole transaction between them." 7 Am. & Eng. Enc. Law, 91; 17 Am. & Eng. Enc. Law, 443. The order in question, when accepted, becomes a contract in writing between the defendants and the Nichols & Shepard Company, and

parol evidence to show that the company was required to
cancel the notes in suit would tend to add to the writing, and,
as between the parties to it, would not be admissible.   But
the evidence shows that the plaintiff had a special interest in
the contract, in the compensation he was to receive for secur-
ing it.   He states that he was required to take the old outfit
in settlement with the company, and he did take it.   He knew
that he would be required to do so when the contract was
made; and, since it was satisfactory to his principal for him
to do so, there was no legal objection to his agreeing to cancel
and surrender the notes which are in controversy, to induce
the defendants to enter into the contract.   If there was an
undertaking to do so, it was collateral to the contract in writ-
ing, and is not in conflict with it.  Proof that it was made
would not in any manner affect the contract entered into by
the defendants with the company.  This case is unlike that of
*Horn v. Hansen,* 56 Minn. 43 (57 N. W. Rep. 315), cited
by the appellant.

II.   If the agreement was made by the defendants with
the plaintiff, as claimed, it was upon a sufficient considera-
tion; but it is insisted that the evidence fails to show that
it was made.   The two defendants and their nephew
testify, in substance, that the plaintiff agreed to take
back the machinery sold by J. Harvey & Co. the year
before, for nine hundred and seventy-five dollars, surrender
the notes in suit, to the amount of five hundred and seventy-
five dollars, give credit on the price of the new outfit for the
four hundred dollars paid on the old one, allow three hundred
and fifty dollars for the Aultman &. Taylor separator, and
take notes of the defendants for one thousand six hundred
and ninety dollars.   The defendants had purchased the Ault-
man & Taylor separator and a horse power, seven years before,
for six hundred and eighty-five dollars, and had used it to
do their own threshing, and, in addition, as we understand
the evidence, had run it two years in threshing for others.
The horse power was not included in the transaction in con-

troversy. The list price of the property sold to the defend-
ants by the company was two thousand four hundred and
forty dollars. There is a discrepancy between the order as it
now appears and a copy of it given to the defendants. In the
original the amount allowed for the old outfit appears to have
been changed from seven hundred and fifty dollars to five
hundred and fifty dollars, while in the copy it is seven hun-
dred and fifty dollars. The cause of that discrepancy is not
clearly explained, but the plaintiff claims that he discounted
the list price of the new outfit two hundred dollars, and the
payments specified in the order amount to the reduced price;
but that is denied by the defendants. The plaintiff claims
that the alteration was made when the order was signed;
but it is not necessary to determine who is right in regard
to that matter. Assuming that the defendants' theory respect-
ing it is right, their claim appears to be that the plaintiff
agreed to take back the property sold in 1895, after it had
been used one year, and allow therefor just what had been
paid for it, and that, in addition, he agreed to allow three
hundred and fifty dollars for a separator which had been used
seven years, and which, with a horse power, had been pur-
chased when new for less than twice that sum. The value
of this old machinery at the time of the transaction in ques-
tion is not shown, but it is a matter of common knowledge
that the value of such property depreciates greatly by use
and lapse of time. The interest of the plaintiff in the sale of
the new outfit is not shown, but it was not sufficient to take
all of the old machinery received, and it seems that the alleged
agreement would have been an improvident one on the part of
the plaintiff. Their testimony is disputed by the plaintiff,
who states that the transaction was an exchange of the new
property for the old, and that the notes which the defendants
gave represented the agreed difference between the values of
the new and the old. The plaintiff is corroborated in that
respect by the order. It shows that the total amount allowed
for all the old property, including the Aultman & Taylor

separator, was five hundred and fifty dollars, or, if the defend-
ants are right as to that, seven hundred and fifty dollars.
That sum, added to the amount of the notes, would make two
thousand four hundred and forty dollars, or just the price
the defendants say they were to pay for the new outfit, and
allow nothing for the notes in suit. Since the defendants
admit that the order shows a part of what was allowed for the
old machinery, it is fair to presume against them that it shows
all that was allowed. The conduct of the defendants tends
to sustain the claim of the plaintiff. They say that the plain-
tiff stated, as a reason for not surrendering the notes in suit
when settlement was made with the Nichols & Shepard Com-
pany, that they were not in his possession, and several days
would be required in which to procure them; but the settle-
ment was not made for several days after the order to the
company was given. The mortgage executed to secure the
notes in suit was not canceled, and it does not appear that the
defendants, at any time after the settlement for the new outfit
was made, asked to have the notes surrendered or the mort-
gage satisfied of record. Correspondence between the defend-
ants and attorneys who held the notes in suit for collection
satisfies us that the defendants at that time did not claim
that the notes had been paid, but that they offered to pay both
if a discount were allowed. On the twentieth day of January,
1897, they wrote to one of the attorneys concerning the notes
as follows: "The notes are made payable at Bonaparte.
Now, when you send the notes and mortgage to Farmers'
& Traders' Bank, Bonaparte, Iowa, we will pay them at dis-
count of ten per cent. If the owners of the notes had sent
the four hundred dollar note which was due January the 1st,
we would have paid it long ago." It is true the defendants
claim that their offers were made in the belief that the notes
had been transferred to an innocent holder; but the explana-
tion, when viewed in the light of all the facts disclosed by the
record, is not satisfactory. It is fair to presume, in the first
instance, that the order in question expresses fully the con-

tract as to all matters of which it purports to treat. It states what was allowed for the old machinery, and the defendants have failed to overcome the presumption that the statement in that respect is full and correct. The burden was on the defendants to prove the alleged verbal agreement, and we are of the opinion that they have failed to do so. It is true that three witnesses testify to the effect that the agreement was made, and that but one testifies that it was not; but we are of the opinion that his testimony, with the written order, and the presumption which it authorizes, the conduct and letters of the defendants, and the unreasonable character of some of their claims, outweigh the testimony relied upon to prove the alleged agreement. We therefore conclude that the plaintiff is entitled to recover the amount of the notes in suit, and to a foreclosure of his mortgage so far as it includes property not transferred to the Nichols & Shepard Company in consideration of the purchase of the new outfit. The decree of the district court is REVERSED.