## Richmond.

J. P. HOUCK TANNING COMPANY v. CLINEDINST.

November 11, 1915.

Absent, Keith, P.

1. EVIDENCE—*Parol Evidence Rule—Subsequent Oral Contract.*—The parol evidence rule has no application to a case where, as in the case at bar, the plaintiff's demand was not embodied in the written agreement of the parties, but rests wholly upon a subsequent parol contract by which the defendant assumed to pay the plaintiff's demand.
2. VERDICTS—*Conflicting Evidence.*—Where the evidence is conflicting, the verdict of the jury is conclusive.

Error to a judgment of the Circuit Court of Rockingham county in a proceeding by motion for a judgment for money. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Sipe & Harris,* for the plaintiff in error.

*J. B. Stephenson* and *Charles A. Hammer,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This writ of error draws in question the validity of a judgment recovered by C. C. Clinedinst against the J. C. Houck Tanning Company in a proceeding by way of motion on an account.

The bill of particulars covered the following items:

Extra work handling 330 tons of bark on Cornelius creek, at $1.50 per ton..............$   495.00

Extra work handling 720 tons of bark on Cornelius creek and Pine mountain, at fifty cents per ton ............................   350.00

Hire of team kept idle from September 1, to September 28th, by failure of defendant to furnish tram cars to haul bark ............   72:00

Hire of team for similar neglect for forty days in August and September ...............   120.00

$1,027.00

The litigation arose out of the following transaction: On January 13, 1913, the J. P. Houck Tanning Company made a contract in writing with the Virginia Lumber and Extract Company, the pertinent features of which were, that the first party agreed to buy from the second party 4,000 tons of chestnut oak and hemlock bark at $2.75 per ton. Peeling and removing the bark was to be done by the first party, and it was to be loaded on tram cars and moved out as rapidly as possible; the loading, etc., to begin within two weeks after peeling commenced, and all bark to be weighed and shipped or stored by November 1, 1913. The territory on which bark was to be peeled was to be accessible to the logging road and under the supervision of the manager of the second party. The price of $2.75 per ton included transportation of bark by the second party from the woods to its yards at Arcadia. The first party was to furnish tram cars free of charge and to be responsible for wrecks caused by improper loading of rolling stock, and the second party to be responsible for wrecks caused by defective track.

On January 16, 1913, plaintiff entered into a written agreement with defendant, the material stipulations of which were these: Plaintiff agreed to peel and deliver f. o. b. tram cars

2,000 tons of chestnut oak and hemlock bark on land of the Virginia Lumber and Extract Company, near Arcadia, from a boundary known as Cornelius creek upon "both slopes of said draft accessible to the tram road located in said draft. The bark in North creek on above mentioned tract on what is known as Pine mountain, beginning at logging line on the north and peeling toward the south to a path on said Pine mountain . . ." The peeling and delivering was to be under the supervision of defendant's agents "as far as concerns the peeling of accessible bark . . . preserving the condition of peeled bark and the hauling of the same as far as concerns the removal of all peeled bark from woods to cars;" plaintiff to abide all agreements between defendant and the Virginia Lumber and Extract Company "covering the purchase of said bark by stumpage . . .;" the price to be paid by defendant for bark delivered by plaintiff f. o. b. tram cars from Cornelius creek $5.65 per ton, and from North creek or Pine mountain $5.50 per ton.

Between the dates of the first and second contracts, and with the view to the execution of the latter, plaintiff and Hoover (defendant's bark superintendent), in company with Edgar (superintendent of the Virginia Lumber and Extract Company) and several prospective contractors for peeling and removing bark, went upon the land in question and had pointed out the boundaries of land where each of them was to peel bark, and, by Edgar, blazed routes for extension and construction of the tram ways, and. points along which bark was to be delivered on the tram cars. The evidence tended to show that plaintiff's writ of agreement, by both contracting parties was hypothecated upon the fulfilment of these representations; and that without such understanding, they (or certainly the plaintiff) would not have entered into the contract. The contemplated extensions of the tram roads were not made in time for plaintiff to reap the benefit of them.

His honor, the circuit judge, correctly ruled that defendant was no more the guarantor of these assurances than was the plaintiff. Nevertheless, the failure of timely performance by the Virginia Lumber and Extract Company to extend the roads sheds light on the alleged conduct of defendant in agreeing to pay plaintiff for extra labor and teams in connection with the delivery of bark. Had the understanding been consummated, one handling of bark, it is alleged, would have sufficed; yet, the evidence further tends to show that such failure compelled plaintiff to shoot 330 tons of bark from the upper side of the mountain into the hollow below, where it was broken up into fine pieces, and had to be gathered into sacks and carried on the backs of men up the mountain on the opposite side, and deposited along the tram way; and subsequently, when cars were furnished, loaded upon them. The expense of these extra handlings was estimated at $1.50 per ton. Of bark from the Pine mountain boundary, plaintiff, for lack of cars, deposited 720 tons along the tram way, the subsequent loading of which entailed an additional cost of fifty cents a ton. It was furthermore shown that loss of time with teams was due to defendant's failure to have cars provided with reasonable promptness to receive the bark.

From the standpoint of a demurrer to the evidence at least, the testimony on behalf of the plaintiff was sufficient to sustain the jury's finding that subsequent to the written agreement defendant assumed to pay $882.00 of plaintiff's demand, with interest from November 1, 1913, subject to a set-off of $514.30, with interest from the same date (the correctness of which was admitted).

Defendant strenuously sought to exclude from the jury all parol evidence in support of plaintiff's demand, and, later, moved to strike it out, and excepted to instructions based thereon, on the theory that such evidence tended to vary the terms of the written contract; yet, obviously, the parol evidence rule has no application to the present case, when plain-

tiff's demand was not embodied in the written agreement and rests wholly upon a subsequent parol contract.   The evidence being admissible, the correctness of the items claimed depends on conflicting testimony, and that issue has been resolved by the jury in favor of the plaintiff.

We find no reversible error in judgment complained of, and it is affirmed.

*Affirmed.*