# Richmond.

## Harriss, Magill & Company, Incorporated, v. John H. Rodgers & Company.

### October 1, 1925.

1. CONTRACTS—*Shipping Agents—Contract by Shipping Agent to Pay Difference in Insurance—Defense that Verbal Contract with Shipping Agent Varied Contract with Ship Owner—Burden of Proof—Case at Bar.*—In an action by shippers against a shipping agent the plaintiffs alleged that the defendant had verbally agreed to pay the difference between the insurance on the goods shipped in the vessel first selected and the insurance on the goods as shipped in the vessel finally substituted by the shipping agent. The defendant denied the verbal contract and further asserted that if such contract existed it would vary the terms of the written contract between the shippers and the ship owners.

    *Held:* That the plaintiff had the burden of showing that the verbal contract with the defendant had been made, and the defendant had the burden to show that plaintiff could not rely on such contract for the reason that there was a written contract which could not be varied by parol proof of the agreement alleged by plaintiff.

2. CONTRACTS—*Shipping Agents—Contract by Shipping Agent to Pay Difference in Insurance—Case at Bar.*—In an action by shippers against the shipping agent for the difference between the insurance on the goods shipped, if shipped on the vessel first named by the shipping agent, and the insurance on the goods as shipped on a vessel substituted by the shipping agent, plaintiff contended that the shipping agent had promised to pay this difference. A witness for the plaintiff testified positively that such an agreement had been made and there was other testimony on the part of the plaintiffs to the same effect.

    *Held:* That the evidence was sufficient to justify the court in submitting to the jury the question of whether the contract had been made by the defendant.

3. AGENCY—*Liability of Agent—Collateral Parol Contract by Agent with Third Party when Negotiating a Written Contract for His Principal.*—If an agent, while negotiating for a written contract to be made by him for his principal with a third party, undertakes on his own responsibility to make a contract himself with the third party, the

agent may bind himself personally by an oral agreement, although the contract resulting from the negotiations which he makes for his principal is in writing. The agent may so bind himself, whether the principal is disclosed or not.

4. AGENCY—*Undisclosed Principal—Liability of Agent.*—When one enters into a contract, orally or in writing, in his own name when he is, in fact, acting as agent for another, without disclosing his principal, the other party may, as a general rule, hold either the agent, or his principal, when discovered, personally liable on that contract.

5. AGENCY—*Collateral Parol Undertaking by Agent—Shipping Agent's Agreement to Pay Difference in Insurance—Case at Bar.*—Where a shipping agent, as an inducement to shippers to enter into and continue the execution of a written contract with its principal, made itself liabe to shippers on a parol contract to pay the difference in insurance rates between the ship first named by the shipping agent and the ship finaly selected by it, the contract is separate, independent of and distinct from the written contract made by the agent for its principal, and a suit thereon against the agent can be maintained.

6. PAROL EVIDENCE—*Agency—Independent Contract of Agent—Case at Bar.*—Evidence of a parol agreement tending to establish a personal contract by a shipping agent to pay the difference between insurance rates on the ship first named by it and those on the ship finally substituted by it for carrying the goods of plaintiffs is admissible in evidence in an action by plaintiffs against the shipping agent, because the contract between the plaintiffs and the shipping agent was distinct from and collateral to the main contract, made with the principal of defendant, the owner of the vessel, to carry the goods, that principal not being bound by the contract. Such a collateral contract is not within the parol evidence rule because it does not vary or contradict the terms of the written agreement made between the parties to it, although one of the parties is acting through an agent.

7. PAROL EVIDENCE—*To Whom the Rule Applies—Parties and Privies—Third Parties.*—The parol evidence rule applies only between the immediate parties and their privies. It does not apply to a controversy between third parties or between a third party and one of the parties to the written instrument.

8. CONTRACTS—*Shipping Agents—Parol Contract by Agents to pay Differences in Insurance Rates Between the Vessel First Named and the One Finally Substituted—Case at Bar.*—Shippers approached defendant, not as agent of any particular vessel, but for the purpose of soliciting defendant's services in its regular business in making inquiries in shipping circles and procuring cargo room for intending shippers. The oral promise, sued upon in the instant case, to pay the difference in insurance rates between the vessel first selected by defendant for plaintiffs and the vessel finally substituted by them, grew out

of a search for a suitable ship. This promise did not relate to the carriage of the goods. Defendant contended that when it came to entering into an agreement, binding the steamer to take the cargo and shippers to ship by the steamer, the contracts in writing did not evidence an agreement between defendant and plaintiff, but that it executed that contract only as agents for the steamer.

*Held:* That as the verbal contract sued on between the shipping agent and the shippers was entirely independent to the freight contract, the court did not err in permitting parol evidence of the agreement as to the difference in the insurance.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by attachment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hughes, Vandevanter & Eggleston* and *Otis Beall Kent,* for the plaintiff in error.

*Baird, White & Lanning,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The proceeding in the lower court was instituted by the filing of the petition for an attachment by John H. Rodgers & Company against Harriss, Magill & Company, Inc., a non resident corporation, as principal defendant. The principal defendant appeared and answered the petition and the issue so made was tried before a jury. The trial resulted in a verdict for the plaintiffs for $5,155.48, on which judgment was rendered. The defendant, Harris, Magill & Company, Inc., the plaintiff in error, then procured a writ of error from the Supreme Court of Appeals. In order for a clear understanding of the errors assigned by the plaintiff in error, it is very essential in this case to

ascertain and bear in mind the exact character of the case for the plaintiffs and the nature of the defense.

The parties will be referred to according to the positions they occupied as plaintiffs and defendant before the lower court, Harriss, Magill & Company, Inc., being the defendant.

In the petition filed by the plaintiffs, composing a partnership under the style of John H. Rodgers and Company, they allege that the defendant, whose principal place of business was in New York, maintained an office and an agency in the city of Norfolk; that the defendant undertook, by an agreement with the plaintiffs, to provide for the plaintiffs freight room on a ship acceptable to them for certain cotton to be shipped from Norfolk to Bremen; that if a ship was more than fifteen years old the insurers required a higher rate on the cargo than on a ship that had been in service for a shorter number of years; that the defendant, when approached by the plaintiffs for the purpose of having it procure the necessary ocean carriage, named for the performance of that service a steamship known as the Kian Maru, stating that she was about five years old; and that such ship was acceptable to the plaintiffs; that the defendant afterwards substituted for the Kian Maru the steamship Frances L. Skinner, stating that she was as good and satisfactory a vessel as the Kian Maru; that the plaintiffs accepted said steamship upon said statement, but afterwards learned that she was more than fifteen years old, and therefore the rate of insurance upon the cotton to be loaded on her would be in excess of the usual rate; that "this fact was communicated to the principal defendant and it agreed to pay the petitioners the difference between the cost of insuring their cargo on said vessel and what that cost would have been if said vessel had been less than.

fifteen years old." The petition further alleged that there was a custom to the effect that the shipping agents should pay such difference, and that the plaintiffs relied upon the custom, the representations and the contract. Upon the trial there was not sufficient evidence to establish such a custom and no instructions were given the jury as to that allegation. The case made by the plaintiffs upon the allegations in the petition rested upon their affirmation of the contract between the defendant company and themselves that the defendant company, upon the discovery of the higher rate of insurance because of the greater age of the steamship Frances L. Skinner, agreed and contracted to pay the difference in the insurance rates.

In the answer to the petition the defendant denied that there was any liability upon it by reason of the agreement or representation set out in the petition; that written agreements for the shipping of the cotton on the steamship Frances L. Skinner were entered into by the defendant as agent of the owners, Skinner and Eddy, of San Francisco, and the plaintiffs; that these contracts, together with the bills of lading, covered all transactions between the parties and constituted, taken together, a written agreement containing all the terms connected with the shipping agreement and with the ocean carriage; that any representation or verbal contract contradicting, varying, altering, or adding to the terms of these written instruments would not be and was not binding upon the defendant, and, therefore, no proof of any such representation or verbal contract would be admissible in evidence; that "it says that neither under the terms of said written contracts nor under the bills of lading used for said cotton was there any provision undertaking the warranty of the age or condition of the said vessel, Frances

L. Skinner, nor is there any provision in said written contracts referring to any other vessel, and that consequently this respondent is not bound on any such warranty or representation."

[1] Upon these pleadings the plaintiffs had the burden of showing that the verbal contract or representation alleged by them had been made by and with the defendant; and the defendant undertook to show that the plaintiffs could not rely upon any such representation, contract, or warranty, for the reason that there was a written contract which could not be varied by parol proof of the agreement alleged by the petitioners, and therefore they had no standing in court and hence could not recover.

[2] Upon the trial it was shown that the defendant corporation maintained an agency and office in the city of Norfolk; that its principal business was that of shipping agents; and the plaintiffs proved that prior to those transactions they had been doing business with the defendant, and on this occasion they approached it to book for them freight room for their cotton from Norfolk to Bremen; that they first named in the early negotiations the steamer Kian Maru, and by reason of a coal embargo this steamer, which was a foreign steamer, could not be obtained and therefore the defendant suggested the Frances L. Skinner; that the Kian Maru was a number one steamer and the insurance rates on her cargo would not exceed the usual rates. Subsequently during the negotiations, when the Frances L. Skinner was suggested, the Norfolk agent for the defendant with whom the plaintiffs were dealing, in naming the steamer, said: "I have to know in an hour; New York is going to call me in an hour; and I will have to ask you to go and see Mr. Rodgers and agree if you will accept the other vessel.

You can assure him the vessel is equal in every respect to the Kian Maru." Witness then said that he hurried over to Mr. Rodgers' office, told him of the situations, that the agent for the defendant, Glasscock, had stated that the Skinner was equal in every respect to the Kian Maru and the rate of freight was the same, and Mr. Rodgers agreed to the substitution; he further said that he went back to Mr. Glasscock, told him that, and while he was talking to him the telephone bell rang, and Glasscock said New York was talking to him, and he answered and then said that the matter was all right, that the Skinner was fixed and would be on hand and would lift the cargo; that subsequently Rodgers and Company learned that the Skinner was over twenty years old and the increase in insurance would amount to considerable. The witness then further testified:

"I left Rodgers & Company's office over on Front street and went right over to the Monroe Building where Harriss-Magill's offices were, and Mr. Glasscock was in the inner office and they said he was busy and could not be disturbed, but I insisted that they send him word to come out and he came out and I said: 'Mr. Glasscock, this Skinner that you have substituted for the Japanese steamer is not of the same age as the Kian Maru, but she is well up in the twenties and there is a stiff insurance additional rate.' He said: 'We will take care of that and make it all right.' He said: 'I got some Japanese in there with me; that will be all right,' and went back in the office. I went then back to Rodgers & Company and told them that Harriss, Magill & Company would take care of that feature of the extra rate of insurance. They rested on that statement and the balance of the matter has been one of negotiations and correspondence between them and Harriss-Magill."

There was other testimony on the part of the plaintiffs, and the evidence on that side, taken together, was sufficient to authorize the court in submitting to the jury whether or not the alleged contract or warranty had been made by the defendant.

On the part of the defendant the testimony shows a denial of the making of any such agreement, and the general course of the evidence for the defendant shows that it relied upon the preliminary shipping contracts and the bills of lading as constituting written agreements which contained nothing with reference to the additional insurance, or the rating, or age, or character, of the Frances L. Skinner. The defendant from time to time moved the court to exclude all the testimony of the plaintiffs as to the parol agreement, on the ground that it tended to vary, contradict or add to a written instrument. At the end of the testimony the court gave the jury three brief instructions, telling the jury that the burden was upon the plaintiffs to prove their case by a preponderance of the evidence, and directing the jury to find for the plaintiffs if they believed from the evidence that the plaintiffs had established the agreement or contract set up by them in the petition.

The defendant assigned as error in the petition the refusal of the court to grant two instructions offered by its counsel. These two instructions embody the two propositions contended for by the plaintiff in error upon which all the assignments of error rest. These instructions are in the following language:

"No. 1. The court instructs the jury that an agent is not in any case responsible in an action on a contract unless the credit has been given to the agent or he has expressly agreed to be liable, and if there is a written contract it must contain apt words to charge him. A duly authorized agent acting in behalf of his princi-

pal is not personally responsible on a contract when the third party knows that he acts in the name and on behalf of his principal.

"And if you believe from the evidence in this case that Rodgers & Company knew that Harriss, Magill & Company were not the owners of the Frances L. Skinner, but were merely the agents thereof and acting as such, in that case the court tells you the contract was the contract of the owners of the ship and not the contract of Harriss, Magill & Company, and you must find for the defendant."

"No. 2. The court instructs the jury that when parties have deliberately put their engagements in writing in such terms as import a legal obligation, without any uncertainty as to the subject or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their understanding was reduced to writing, and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, as would tend in many instances to substitute a new and different con- tract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words as the rule is now more briefly expressed, parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instru- ment.

"And the court further instructs you that if you believe from the evidence that the written freight con- tracts Nos. 205, 209 and 246 were signed by Harriss, Magill & Company and Rodgers & Company and delivered by the latter to the former, and that bills. of lading covering the 6,202 bales of cotton carried for Rodgers & Company on the Frances L. Skinner were signed by Harriss, Magill & Company, and delivered.

to Rodgers & Company, and all of the same were by the latter accepted and appropriated, then the court tells you that these documents constitute the sole and exclusive engagement between the parties, and in such event you must find for the defendant."

It appears from the testimony that in October, 1919, the shipbroker who was acting for the plaintiffs approached the agent of Harriss, Magill & Company at the instance of plaintiffs, and told him that he wanted to procure room in a ship to Bremen for the plaintiffs, and a day or two afterwards the defendant named the Japanese steamer Kian Maru, which it said was five or seven years old. It is shown that four of the preliminary contracts were signed by the plaintiffs and the defendant, the first contract being dated the 13th of November and the last one about the 9th of December, 1919. The loading appears to have started early in December and several bills of lading were issued to the plaintiffs as shippers and were signed by the defendant as agent for the owners of the steamship, Skinner and Eddy, of San Francisco; that the cotton was all loaded and shipped under these bills of lading and the plaintiffs accepted the bills and negotiated them. The preliminary shipping contracts were all similar, and, in order to show their exact purport, one of them is now transcribed, as follows:

HARRISS, MAGILL & CO., INC.
STEAMSHIP OWNERS, AGENTS AND BROKERS
NEW MONROE BUILDING
NORFOLK, Va.

Contract No. 209
Broker's No._____

Shipper    Rodgers & Company
Address    Norfolk, Va.
Gentlemen:

"We confirm engagement of freight room from Nor-

folk-Newport News, Va., to Bremen, Germany, Via

"Commodity:    1000 Bales High Density Cotton—1500
                      Bales Standard Cotton.
"Rate:    One Dollar Seventy-five ($1.75) per 100 pounds
                High Density.
            "Two Dollars ($2.00) per 100 pounds Standard.
"Steamer:    Frances L. Skinner
"Sailing date:    Expected due November 20th.
                      "Subject to following conditions:

"Steamer reserve right of lifting grain in excess of their net registered tonnage.

"Grain ordered for vessel prior to noon shall be delivered to vessel by noon of the following business day.

"Freight originating locally is to be delivered on twenty-four hour call from the company.

"It is agreed and understood that this contract is to be carried out under terms and conditions of bills of lading issued by the steamship company.

"This contract is subject to all war clauses and: or other clauses and: or regulations in force by the steamship company with whom contract is made at time shipment goes forward from seaboard.

"In consideration of your making application to the Traffic Control Manager for G. O. C. authority for movement of above from point of shipment to Norfolk-Newport News, shippers hereby agree to indemnify you against any liability or expense for demurrage, storage or otherwise for which you would not be responsible if such applications were not made and the shipment not consigned in your name.

"(The vessel shall have liberty to deviate for the purpose of making trial trips and shall pay any reason-

able increased cost of cargo insurance, if any, incurred in consequence thereof.)

"(The steamer being subject to the control of the U. S. Shipping Board, it is understood that if she is withdrawn from the company's service, the company may, at its option, either cancel this contract or ship the goods by another steamer.)

"Yours very truly,

"Harriss, Magill & Co., Inc.,

"G. A. Glasscock, Agent.

"Accepted:

"Rodgers & Co.

"By_____

"Shippers.

"Freight Brokers: Mr. A. C. Humphreys."

The bills of lading following upon these contracts were documents of considerable length, as is usually the case with bills of lading providing for ocean carriage. They give the name of the steamer and the names of the owners of the steamer, and were signed by the defendant as agent of the carriers.

The two questions raised upon the record for this court to decide arose upon the contentions of the plaintiff in error, first, that the defendant, acting as it was in making the preliminary contract as agent for the owners of the steamship, even if then not disclosed, could not be sued by reason of any oral statements made by them prior to or contemporaneous with the execution of the shipping contracts and bills of lading; second, that the case cannot be maintained because the alleged contract sued upon rested altogether upon parol testimony, and the court erred in failing to sustain their motion to reject such testimony and in failing to give their instructions, on the ground that such testi-

mony was plainly in violation of the parol testimony rule.

It is insisted for the defendant company that it, through its agency at Norfolk, in the transactions it had leading up to the shipping agreements and bills of lading, was acting as agent for the steamer or the owners of the steamer. In the view we take of the case, it is not essential to determine whether the name of its principal was disclosed at the time the preliminary contracts were made, or only later when the bills of lading were signed containing the name of the principal of the defendant.

Learned counsel for the defendant referred to various cases in Virginia in which the well known rule is declared that parol evidence is not admissible to vary or contradict a writing when a complete memorial or agreement of the parties is in writing. These authorities include the well known case of *Slaughter* v. *Smither*, 97 Va. 206, 33 S. E. 544, and other cases up to the most recent case on the subject, *Continental Trust Company* v. *Witt*, 139 Va. 458, 124 S. E. 265. In reply to the positions taken by the plaintiff in error, the defendants in error insist that under all the circumstances the verbal agreement in question was a collateral agreement, independent of and distinct from the subject of the written agreement, and therefore could be shown by parol. The defendants in error likewise referred to various Virginia cases in which several well known exceptions are made to the parol evidence rule—such cases as *Houck Tanning Co.* v. *Clinedinst*, 118 Va. 131, 86 S. E. 851; *Clark* v. *Hugo*, 130 Va. 99, 107 S. E. 730; and *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157.

The many exceptions allowed to the parol evidence rule have created some confusion as to its application,

but it is not necessary for the court to consider whether or not the oral agreement here falls within any of those exceptions, at least not to the same extent as would have been the case if Skinner and Eddy had been made the defendant.

The contention of the defendant is that the complete contract in writing, consisting of the several papers mentioned, was a contract not between the defendant here and the plaintiffs, but was a contract between the principals of the defendant and the plaintiffs. If the action here had been against Skinner and Eddy, the principals of the defendant, it might be that they would not be bound by anything done by them or their agent in prior negotiations, or in contemporaneous dealings; but the question is not presented in that way by the record before us. This is a proceeding in which the plaintiffs are suing the defendant corporation personally and not as agent, nor are the plaintiffs suing the principal in transactions in which the defendant dealt as agent.

[3] If an agent, while negotiating for a written contract to be made by him for his principal with a third party, undertakes on his own responsibility to make a contract himself with the third party, the agent may bind himself personally by an oral agreement, although the contract resulting from the negotiations which he makes for his principal is in writing. The agent may so bind himself, whether the principal is disclosed or not.

[4, 5] This principle of law is as well settled as the principle that when one enters into a contract, orally or in writing, in his own name when he is, in fact, acting as agent for another, without disclosing his principal, the other party may, as a general rule, hold either the agent, or his principal, when discovered, personally

liable on that contract. Here, however, the plaintiffs are not seeking to hold the defendant liable on a contract he made for or in the name of his principal. The plaintiffs assumed the burden of proving that the defendant personally made itself liable on an oral contract to pay the difference in the insurance rate, as an inducement to the plaintiffs to enter into and continue the execution of the written contract with the principal. That such a suit can be maintained seems to be well settled. The contract in a case of that character is separate, independent of, and distinct from the contract made by the agent for his principal.

The most familiar instance of such an agreement occurs in the case of an independent contract made by an agent when selling the goods of his principal, to warrant the quality of the goods so sold, as was the case in *Wildar* v. *Cowles*, 100 Mass. 487. See also *Dahlstrom* v. *Gemunder*, 198 N. Y. 449, 92 N. E. 106, 19 Ann. Cas. 771; *Shordan* v. *Kyler*, 87 Ind. 38; *Davis* v. *Patrick*, 141 U. S. 479, 12 S. Ct. 58, 35 L. Ed. 826; *Montague Co.* v. *Aycock-Holly*, 139 Va. 714, 124 S. E. 208.

In 1 Mechem on Agency (2nd ed.) this and cognate subjects are dealt with in sections 1424, 1427 and 1444. In section 1427, under the caption, "agent may bind himself by collateral contract," Mr. Mechem says:

"Still further, it is possible that the agent may bind his principal only upon the main or principal contract and may bind himself only by a subsidiary contract collateral to the main one. Thus, an agent in selling his principal's goods, for example, may add to the contract of sale which he makes for his principal his own collateral agreement to warrant the quality of the goods so sold. In such a case, of course, there is no room for election, because both are not bound to the same undertaking."

The plaintiffs' case must stand upon this principle of law.

[6, 7] Applying this rule to the defense, it becomes plain that the evidence of an oral agreement tending to establish a personal contract or a warranty directly between the plaintiffs and defendant was admissible, because the contract was distinct from and collateral to the main contract made with the principal of the defendant, that principal not being bound by the contract. Such a collateral contract is not within the parol evidence rule because it does not vary or contradict the terms of the written agreement made between the parties to it, although one of the parties is acting through an agent.

While we have not followed exactly the line of argument of counsel in stating the grounds upon which we reach our conclusion as to this question, we are satisfied that our decision is founded upon sound reason and fundamental principles, and is in harmony with the analogies of the law. In this case the plaintiffs were not suing upon the written contract nor seeking to enforce any of its terms, nor were the defendants immediate parties to the contract, as they were manifestly acting only as agents or brokers in procuring cargo room on an ocean steamship for the plaintiffs. It is evident that, from a business standpoint, the defendants were somewhat in the same situation as a modern fire insurance agency when approached by a property owner for a policy against fire. In stating the parol evidence rule the courts are careful to show that it applies only between the immediate parties and their privies (*Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157) though in some cases a controversy may arise as to what is meant by an immediate party. It is true that in a proper case an agent, though

acting in his own name, yet for an undisclosed principal, may bind himself personally upon a written contract. But such a presumption is excluded in this case as the defendant was, in signing the written contract acting as agent and disclosed its principals in concluding the freight transaction, by executing the bills of lading in the name of the principals.

It is likewise a well established principle that the rule excluding parol evidence does not apply to a controversy between third parties, or between a third party and one of the parties to the written instrument. *Rosella* v. *Commonwealth*, 110 Va. 235, 65 S. E. 526; *Bruce* v. *Roper Lumber Co.*, 87 Va. 381, 13 S. E. 153, 24 Am. St. Rep. 657.

In the case of *Follinsbee* v. *Sawyer*, 157 N. Y. 196, 51 N. E. 994, a real estate agent sued for his commissions on negotiating a sale. The plaintiff put in evidence an option, signed by the owner and addressed to certain parties, which had been abandoned but which by a subsequent endorsement on it, signed by the owner and two purchasers, was claimed as a completed contract of sale between the owner and the purchasers. The plaintiff insisted that this was proof of his having procured a purchaser willing to buy on the terms prescribed by the owner. The defendant offered parol evidence tending to show that the endorsement was not intended as a complete and binding agreement on the part of the purchasers. In holding that the evidence was admissible, and so reversing the judgment of the trial court, O'Brien, J., states:

"Whatever may be said about that paper it certainly was not a contract between the parties to this action. It was signed by the defendant and the two parties who it is said were willing to purchase, but the plaintiff was not a party to it in any legal sense. The

statements in it did not bind him. He was not concluded by it, and he could have resorted to parol proof to make out his case. The rule of evidence that makes a written contract conclusive proof of what the parties have agreed to, thus merging in it all prior parol negotiations, and which rejects parol proof to vary or contradict the writing, or its legal import, applies only in controversies between the parties." See also *Garber v. Martin*, 67 Neb. 445, 93 N. W. 722; *Gierman v. Barbieri*, 124 Miss. Rep. 157, 207 N. Y. S. 174.

See also the case of *Harvey v. Henry*, 108 Iowa, 168, 78 N. W. 850, where it is said in the syllabus:

"Parol variance: Collateral contract. An agent's oral agreement, in making a sale in which he had a special interest, by written contract that, as an additional inducement, he will surrender certain notes held by him against the buyer, may be shown by parol in an action on such note by the agent, though the written contract of sale, made in the name of the principal, was complete; since, as against the agent, the oral contract did not conflict with the written one, but was collateral thereto."

In *Hull v. Brown*, 35 Wis. 652, the plaintiff, Hull, entered into a written contract with Gunnison & Sherman, through their agent, Brown, for the purchase of a cultivator. The written contract itself contained a warranty of good material and effective work. At the time the contract was signed by Hull, Brown agreed orally that if the cultivator did not work satisfactorily, he was to return Hull's purchase money note to him or pay it himself, and Hull should return the cultivator to the railroad station. Hull sued Brown on this oral contract. It was insisted by the defendant that oral testimony was inadmissible to prove the verbal agreement, and also that the contract sued upon came within the

statute of frauds of that State. In upholding a judgment for the plaintiff, the court says, in reference to the first point (656):

"There can be no doubt about the correctness of the legal proposition stated in the brief of counsel for the defendant, viz., that parol testimony is inadmissible to vary, contradict or add to a contract which has been reduced to writing, and that, in the absence of all allegation of fraud or mistake, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract. It is needless to remark that this rule of evidence is elementary. And, therefore, it is entirely clear that if the plaintiff had brought an action against Gunnison & Sherman, he would be bound to show a breach of the written contract set out in the answer, in order to recover. In that case, the written order would prevail over any verbal contract claimed to have been made by the plaintiff with their agent contemporaneous with the giving of this order. But the plaintiff is not seeking to recover upon a contract made with Gunnison & Sherman, but upon one made with the defendant personally, upon which the latter alone is liable. It is the individual obligation of the defendant which the plaintiff seeks to enforce; consequently the rule above alluded to can have no application. Whether or not the plaintiff made the parol contract with the defendant, as he claims, was a question of fact upon the evidence."

The legal principles established in the cases referred to show the correctness of Mr. Mechem's statement of the law and of our conclusion that the parol evidence admitted in the instant case did not vary or contradict the terms of the written instrument put in evidence by the defendant, nor alter in any way its legal purport, but that its only effect was to show an agreement be-

tween the parties to this action entirely different from the writing relied upon. It was open to either party to this action to prove or disprove the contract upon which the plaintiff relied independent of the writing.

The circumstances of the instant case require, with much more reason than in any of the cases cited above, that the plaintiffs should not be precluded from proving their contract by parol evidence. In some of those cases, where the agent sought to be held personally was a special agent for a named principal, and engaged in negotiations with a third party under his authority as agent, a statement made by him in reference to the subject matter of the agency was presumed to be made by him in his character of agent, and it was required that his personal undertaking should be expressly shown. In the case here the defendant company, however it may be designated, was engaged in its own independent business in the city of New York, with a branch office in Norfolk. It held itself out to the public as conducting a general shipping or forwarding agency, which had for its purpose the procurement and placing of ocean transportation for persons who might seek its services in that regard.

When approached by the plaintiffs it undertook on its own account to find a suitable steamer for them. All the negotiations relative to the selection of a proper ship were carried on between the parties to this action verbally. When the steamer Skinner was selected, the preliminary contract that this steamer would carry the cargo was executed by defendant solely as agent, as it insists, although no principal was then named. This was immaterial, as the procurement of a ship was the subject of the dealings between the parties, and the shippers were not interested in who were the owners; the first steamer suggested seems to have been of

foreign registry and ownership. There is no presumption here that the defendant was acting as agent in making the agreement sued on. There is no suggestion that under any circumstances they had authority to bind the ship owners by such an agreement. It was a representation of a fact, acted upon by the other party, made by the defendant in the course of its own independent business dealings with the plaintiffs.

[8] In order to reach a proper solution of the question before us, the following leading features of the case arising upon the records must be steadily borne in mind, viz: (1) That Harriss, Magill & Company, Inc., were not sought out nor approached by Rodgers & Co. as agents for the Japanese owners of the Kian Maru, nor of the owners of the Frances Skinner, but for the purpose of soliciting the personal services of Harriss, Magill & Company, Inc., in the irregular business of making enquiries in shipping circles and procuring cargo room for intending shippers, and that primarily the negotiations had between them were with reference to that undertaking; (2) that the special oral promise sued on here, whether express or implied, grew out of the search for a suitable ship and was made in regard to the selection and procurement of such a vessel; (3) that the promise or warranty sued on did not relate to the mere carriage, nor to any of its proper incidents; (4) that when it came to entering into an agreement binding the steamer to take the cargo, and the shippers to ship it by that steamer, Harriss, Magill & Company, Inc., insist, both in their pleadings and in argument, that the preliminary contracts in writing do not evidence an agreement between them and the plaintiffs, but that they executed these contracts only as agents for the steamer, or for the owners.

The verbal contract sued on here is much more than

merely collateral to the freight or transportation contract made on behalf of the steamer, and is entirely independent of it and its terms. If this independent contract was made by the defendant, it alone assumed responsibility for its performance, and personal liability for its breach. We see no reason in this case to invoke the parol evidence rule, as the defendant disclaims any liability upon the written document, which it is claimed the parol evidence tends to vary. This is not a suit on that written contract, nor between the parties to it. The trial court correctly said, as the petition states, that "it should also be observed that this case is in legal effect an action of assumpsit upon the parol promise, and the written contracts were admitted as evidence and were only necessary to show the amount of damages plaintiffs had suffered. It was in no sense a suit on a written contract."

The plaintiffs appear to have made demand upon the defendant very promptly for reimbursement of the amount sued for, as the steamer sailed about December 15th and on January 2nd following they wrote the defendant giving it the exact amount and requested payment.

The court, therefore, did not err in allowing parol evidence to be admitted, and it did not err in failing to instruct the jury that the defendant could not be sued because it had been acting as agent in the main transaction, or in failing to instruct the jury that the defendant could not be sued because the main contract constituted the sole engagement between the parties and was in writing, as in fact, the defendant here was not in its own right a party to that contract upon its own theory, if it was acting altogether for another.

It is not necessary, therefore, to consider whether or not the two instructions offered by the plaintiff in error otherwise correctly state the law.

In the petition for a writ of error the objection made to the instructions given for the plaintiffs are that they entirely ignore the fact that there was a written contract, and that they disregard the question of agency. As we have seen, it was not proper to instruct the jury upon these matters.

It is insisted that the case bears with some degree of hardship upon the defendant, as it will be called upon to pay the large sum for which judgment was rendered against it. The record does not disclose whether or not there is, or can be made, any arrangement between it and the ship owners. However that may be, upon the whole record we are of the opinion that the defendant can be sued upon its own, personal contract, notwithstanding the fact that in the making of the main contract it was only acting as agent; that the question of whether or not a personal contract binding upon the defendant was made by it was submitted to the jury, and they having found for the plaintiffs upon the evidence, neither the trial court nor this court should interfere with their verdict.

Our conclusion, therefore, is to affirm the judgment of the lower court.

*Affirmed.*

CHRISTIAN, J., dissenting.

The legal principles involved in this case are of such importance that in finding myself unable to agree with the conclusions of the other members of the court, I feel constrained to set out my views fully in a dissenting opinion.

There is no dispute about the evidence and the facts found by the jury under instructions from the court, but as the case hinges upon the parol evidence rule it will tend to clearness to set it forth in substance.

Rodgers & Co. wanted to make a shipment of cotton to Bremen, Germany. There were no regular steamship lines to that point, and the shippers did not have enough cotton to make a steamer load, so they had to find a steamer going to Bremen on which they could secure cargo space. In order to do this, they employed Humphreys, a broker, who would be paid by the shipowners or their agent.

Humphreys went to Harriss, Magill & Co., who were agents for the owners and told its manager what Rodgers wanted. The manager said he would see what he could do. After several days, the manager reported he could secure freight room on a Japanese steamer (seven years old, according to Humphreys), the Kian Maru, which was acceptable, and, as was the custom, *it would put the contract for freight room in writing to be executed by the shipper and agent.* Before this was done Harriss, Magill & Co. informed Humphreys that the Kian Maru could not carry the cotton as a coal embargo prevented. However, it could furnish freight room on the Skinner, which was equally as good a vessel, and this was accepted, and, as usual in such cases, the contract for freight room, including all of its terms in shape of a letter, was sent to Rodgers & Co. by Humphreys and accepted, thus making a contract in writing for freight room between Rodgers & Co. and Harriss, Magill & Co., agents.

There were three contracts for freight room which contained all the terms, conditions and stipulations that were to be included in the bills of lading issued by the owners of the vessel. The scope of the contract for freight room will be better understood by the quotation of those parts that will present the issue before the court.

"Harris, Magill & Co., Inc.,

"Steamship Owners, Agents and Brokers,

"New Monroe Building,

"Norfolk, Virginia.                    "Contract No. 209

                                       "Broker's No.

                    "Date November 15, 1919.

"Shipper: Rodgers & Company,

  "Address, Norfolk, Va.

  "Gentlemen:

  "We confirm engagement of freight room from,

"Norfolk-Newport News, Va., to Bremen, Germany, via

"Commodity:   1000 bales High Density Cotton—1500
  bales standard cotton.

"Rate:   One dollar seventy-five ($1.75) per 100 pounds
  high density; two ($2.00) per 100 pounds standard.

"Steamer: Frances L. Skinner.

"Sailing Date: Expected due last half of November

"Subject to the following conditions

\*       \*       \*       \*       \*       \*       \*       \*       \*

It is agreed and understood that this contract is to be
carried out under terms and conditions of bills of
lading issued by the steamship company   \*   \*   \*
(The vessel shall have liberty to deviate for the purpose
of making trial trips and shall pay any reasonable
increased cost of cargo insurance, if any incurred in
consequence thereof).

                    "Yours very truly,

                "HARRISS, MAGILL & CO., INC.

                    G. A. GLASSCOCK, AGENT.

"Accepted:

  "Rodgers & Co.

    "By-------------------------------------------

                    "Shippers

  "Freight Brokers:   Arthur C. Humphreys."

Some little time after the above contract was accepted

Hampton Harris, who was at that time a member of the firm of Rodgers & Company, learned that the "Skinner" was over twenty years old, and it would take a considerable increased insurance on the cargo. He told Humphreys, who went to the office of Harriss, Magill and called Mr. Glasscock from the inner office and said: "Mr. Glasscock, this Skinner that you have substituted for the Japanese steamer is not of the same age as the Kian Maru, but she is well up in the twenties and there is a stiff insurance additional rate." He said: "We will take care of that and make it all right." He said: "I have got some Japanese in here with me; that will be all right."

On December 6–19, Mather & Co., underwriters' agents, wrote Rodgers & Co. that the additional rate of cargo insurance on the "Skinner" for age was three-eighths of one per cent.

Some time after December 12, 1919, the "Skinner" came to Norfolk, according to the contracts for freight room, and Rodgers & Co. loaded upon her 6,202 bales of cotton, accepted bills of lading for their cotton executed by Skinner & Eddy, owners, signed by Harriss, Magill & Co., Inc., as agents, paid the freight in full to it, had their cargo of cotton insured (as was the custom) and the cotton was delivered safely.

It will be observed that the cargo of cotton was shipped and delivered strictly according to the written contracts for freight room and the bills of lading. After the contract for carriage of the cotton had been fully executed, without any suggestion of additional terms, Rodgers & Co. wrote to Harriss, Magill & Co., Inc., in January, 1920, demanding payment of $5,155.-48 extra insurance on cotton "*shipped on your* steamer" Frances L. Skinner. This was never paid, and two years thereafter Rodgers & Co. proceeded by attach-

ment against Harriss, Magill & Co., Inc., as owners of the "Skinner" to recover the excess insurance paid, upon the ground that it (the defendant) agreed the cotton should be carried on the Kian Maru seven years old, but subsequently substituted the "Skinner," assuring the plaintiff's broker that she was equally as good (which was true except in the particular of age), and when it was discovered that the "Skinner" was over fifteen years of age and carried excess insurance on cargo, promised to pay such excess insurance.

The plaintiffs in their attachment did not mention the written contracts by virture of which their cotton was shipped; when the case came to trial, the defendant objected to all parol testimony because the entire transportation contract was in writing. Its objection was overruled and the entire colloquium was introduced in evidence.

When the evidence was concluded the learned judge of the circuit court held that the defendant was *the principal* in the contract of carriage, notwithstanding the contract for freight room showed upon its face that it was acting as agent, and the bills of lading, which were the real contracts of carriage, were signed by the owners, Skinner & Eddy. Upon that construction of the contract, and at the request of the plaintiffs and over the objection of the defendant, he gave the two following instructions:

*Plaintiff's Instruction No. 1.*

"If the jury believe from the evidence that the defendant agreed that the cotton cargo of the plaintiff should be carried on the steamship Kian Maru, and subsequently induced the plaintiff to consent to the substitution of the steamship Frances L. Skinner for

the steamship Kian Maru by representing or agreeing that the steamship Frances L. Skinner was in every respect as satisfactory a ship as the Kian Maru, and that the Frances L. Skinner was not as satisfactory as the Kian Maru because the rate of insurance on the Frances L. Skinner was higher than it would have been on Kian Maru for the reason that the Frances L. Skinner was an older vessel than the Kian Maru, they may find for the plaintiff."

*Plaintiff's Instruction No. 2.*

"If the jury believe from the evidence that the defendant agreed to make good the increased cost of insurance after they had knowledge of the fact that the cost of insuring the plaintiff's cotton cargo on the steamship Frances L. Skinner was greater than it would have been had the cotton been located on the steamship Kian Maru, they may find for the plaintiff."

There was a verdict and judgment for $5,155.48, and the defendant sued out this writ of error for review in substance of two errors. It should be needless to state that this court can only consider such points and errors in the case as are brought up to it properly, but the majority opinion practically tries the case here *de novo*.

The first assignment of error is to the refusal of the court to give two instructions properly stating the law, and submitting to the jury whether the defendant *acted as agent for a disclosed principal* and assumed expressly and explicitly personal responsibility. The court refused to submit this issue to the jury, thereby holding that the defendant was principal in the transportation contract, or was bound as principal because the owners were not disclosed. This assignment of error will be considered later in this opinion because by

reason of the defendant being an agent, the majority affirmed the judgment.

The second assignment of error, raised by objections to the admission of testimony, and the giving and refusing of instructions, presents the sole question for consideration of the appellate court; that is, that the contracts signed by both parties for freight room on the Skinner having been fully executed, and the cotton carried and delivered pursuant to bills of lading issued by the owners and accepted by the shippers, whether the slippery memory of one of the parties can contradict, vary or add to those written contracts. This decision is momentous because on it hangs the fate of the parol evidence rule. Should this court decide that all that is necessary for a party to avoid the workings of this ancient and most vital rule is to allege that part of the contract was reduced to writing and part oral (that in effect is what the plaintiffs desire), *then where will be the sanctity attached to a written instrument?* In no State is this sound rule of public policy more rigidly adhered to than in Virginia, and no exceptions to the rule permitted, but some cases which do not come within the rule are erroneously construed as exceptions.

In this connection, in the written opinion of the trial judge (which opinion is not filed with the record), he says on this point: "It should also be observed that this case is in legal effect an action of assumpsit on the parol promise, and the written contracts were admitted as evidence and were only necessary to show the amount of damages plaintiff had suffered. It was in no sense a suit on a written contract."

Conceding that the defendant *agreed that the cotton cargo should be carried on the Kian Maru,* and when it was discovered that the Kian Maru could not carry the cotton because of the coal embargo, then the defendant

offered the Skinner to carry the cotton with the express assurance that it was equal in every respect to the Kian Maru, especially in point of age, and if it took excess insurance the defendant would pay the excess, there was a parol executory contract to carry the cotton on the Skinner. The negotiations about the Kian Maru were merged into the contract for the Skinner. When the parties came to reduce their contract to writing, whether there was an express promise to pay the excess insurance, or a warranty that the Skinner was the equal in point of age of the Kian Maru, the law is mandatory that those terms should be included in the written contracts. Public policy and the sanctity of written contracts has induced the courts to hold that when parties have reduced their parol negotiations to writing, the written contract is conclusively presumed to contain all of its terms. What legal magic is there in the word "substitute" to keep the abandoned nego-tiations for freight room on the Kian Maru in effect, and thus abrogate the parol evidence rule?

If the Kian Maru negotiations ever resulted in a contract, it was entirely merged and superseded by the contract for the Skinner, and the use of the word "substituted" cannot keep in effect the Kian Maru contract. The obvious fact is that if there was any agreement about the age of the Skinner, or excess insurance, it has been omitted from the written contracts, and the plaintiffs are claiming, as is usual in such cases, their right to introduce oral proof to sustain their allegations upon the alleged promise of the defendant that the Skinner did not take excess insurance, and if she did, it was a distinct independent collateral agreement, and not a part of the written contract for freight room.

The courts in Virginia adhere with the greatest strictness to the parol evidence rule, and allow practically no exceptions thereto.

The case of *Slaughter* v. *Smither*, 97 Va. 202, 33 S. E. 544, is very similar to the one at bar. In that case the party purchased a drug business and claimed the seller agreed as part of the consideration not to go into the drug business again. This contract of purchase was in writing, but it contained nothing about not going into business, and he undertook to prove by parol that as an independent contract. Judge Harrison said: "This court has manifested no disposition to fritter away the rule of evidence in question by nice distinctions to meet the hardships, real or supposed, of particular cases. The record of the case at bar furnishes, however, no ground in support of the distinction relied upon by the appellee. The written contract filed with the bill is a clear and complete memorial, needing no explanation, and lacking nothing that would add to its binding force. It cannot be assumed that the written contract was designed as *an imperfect expression of the parties' agreement*, from the mere fact that the written memorial contains *nothing on the subject to which parol evidence was directed*. On that assumption, the rule which excludes parol proof as a means of adding to the contract would be entirely abrogated, and to permit parties to lay a foundation for *adding* to the *contract* by oral testimony that *they agreed that only that part of their contract should be reduced to writing, would open the door to the very evil the rule was designed to avoid.*"

"The only evidence of the completeness of a written contract as a full expression of the terms of the agreement is the contract itself. Where parties have deliberately put their mutual engagements into writing in such language as imports an obligation, it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance; consequently, all parol evidence of con-

versations held between them, whether before, *after* or at the time of the completion of the contract, will be rejected. If the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied, parol evidence to vary or add to its terms is not admissible."

If the assurance of the age of the Skinner be assumed to be a warranty, it could not be proven by parol.

In the case of *Seitz* v. *Brewers Refrigerator Company*, 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837, where the plaintiff, by written contract, purchased a refrigerator machine and tried to prove a previous oral representation as to the powers of the machine, claiming the representation to be an independent collateral contract, Chief Justice Fuller, in holding that the evidence was not admissible, said: "* * but such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies—that is, it must not be so closely connected with the principal transaction as to form part and parcel of it, and when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing."

The whole theory of the plaintiffs' case is based upon the contention that the parol agreement to carry the cotton upon the Kian Maru was a binding and legal obligation, by which the cotton was loaded, shipped and delivered, and that the Skinner was *merely substituted* or put in the place and stead of the Kian Maru. This makes an oral contract without terms or condi-

tions expressed for the Kian Maru, contradict, vary and entirely supersede the written contract for carriage of the cotton upon the Skinner, upon the claim that it was an independent collateral agreement.

The learned judge of the trial court, in his written opinion, cites, as authority to sustain his ruling that the Kian Maru was a distinct, independent collateral contract, the two cases of *Brent* v. *Richards*, 2 Gratt. (43 Va.), 539, and *Tuley* v. *Barton*, 79 Va. 387. The case of *Brent* v. *Richards* held that where a slave had been sold under a written bill of sale, which appeared to be formal and complete, the vendor might prove a contemporaneous parol agreement on the part of the vendee, giving the vendor the right to repurchase the slave upon certain conditions. Since the case of *Slaughter* v. *Smithers, supra,* and other cases, the case of *Brent* v. *Richards* seems to be no longer law in this State, but if it is, it is confined to the particular case where the written bill of sale represents the exclusive undertaking of the vendor, while the parol agreement related to a collateral and not inconsistent undertaking on the part of the vendee. The case is not authority in the instant case where the contract was *inter partes*. *Rector* v. *Hancock*, 127 Va. 101, 108, 102 S. E. 663.

*Tuley* v. *Barton* was a case of a receipt which merely acknowledged delivery and was not a contract, so the parol evidence rule does not apply.

Counsel for the plaintiffs, to sustain their contention in this court that the Kian Maru agreement was an independent collateral contract, cited *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157; *Clark* v. *Hugo*, 130 Va. 99, 107 S. E. 730, and *Reliance Life Ins. Co.* v. *Gulley's Admx.*, 134 Va. 468, 114 S. E. 551. These cases decide that where there is a parol condition precedent between the parties, *as part of the delivery,*

whereby the written contract has no vitality until the condition is performed, the written contract was never an obligation until the condition was complied with. But if the written contract had vitality for a single instant of time, parol evidence was inadmissible to vary, contradict, or add to the written contract. The contract in this case was binding upon the parties when signed, and plaintiffs accepted the benefits thereof. The rulings in this case abrogate the parol evidence rule, and the verdict should be set aside, and judgment entered for the defendant.

It may be inferred that the majority opinion concurs in the facts and law as above set forth. But overlooking the elementary principle that in jury trials the jury must find the facts from the evidence and not the court; that the facts found by the trial court and jury are conclusive upon the appellate court, if sustained by the evidence; the majority opinion has found that Harriss, Magill & Co., Inc., was agent of a disclosed principal, notwithstanding the trial court, at the request of the plaintiff, refused to submit to the jury the question of fact whether the defendant was agent but principal. It was absolutely essential to the plaintiffs' claim that the defendant be charged as principal, because if agent of the Kian Maru and also agent for the owners of the Skinner, there was no authority to substitute the latter for the former; the contracts were separate and distinct. The plaintiffs, by their pleading and procedure, have elected to treat the defendant as principal, and they are estopped now to take the inconsistent position that it acted as agent in the transaction, nor can this court do so for them. The court cannot make a case for a plaintiff and decide it in his favor.

Having found the above fact, the well settled principle of the law of agency, that an agent may pledge

his personal responsibility for his principal is invoked. The rule of law in Virginia applicable to contracts thus made may be stated thus: Every contract made with an agent in relation to the business of the agency is a contract with the principal, entered into through the instrumentality of the agent, provided the agent acts in the name of the principal. If an agent makes full disclosure of his principal to the one with whom he is dealing, *the legal presumption is that credit is given to the principal and not the agent,* unless it further appears that credit was *expressly* and exclusively given to the agent, *and it was clearly his intention to assume personal liability. Lambert* v. *Phillips,* 109 Va. 632, 635, 64 S. E. 945; *Richmond, &c., R. Co.* v. *N. Y. &c. R. Co.,* 95 Va. 386, 28 S. E. 573.

The legal presumption is that the language used pledged the credit of the principal, (a) unless credit was expressly and exclusively given to the agent, and (b) the agent clearly intended to assume personal liability. These *facts have to be expressly and properly averred in the pleadings. Dahlstrom* v. *Gemunder,* 198 N. Y. 449, 92 N. E. 106, 19 Ann. Cas. 771. Further, these essential facts must be proven by the evidence and found by the jury under proper instructions, and not by the court.

The counsel who prepared the petition and conducted this case in both courts repudiates their theory of the case and law adopted in the majority opinion, and bases the liability of the defendant as principal upon its signature to the contracts for freight room without disclosing any principal, citing the case of *Leterman* v. *Charlottesville L. Co.,* 110 Va. 769, 67 S. E. 281, which held that Leterman signed the contract which in apt words bound him personally, and that parol evidence was not admissible to prove another was liable also on the contract. The principal was dis-

closed by the bills of lading before the contract was concluded, and this is all the disclosure required by law.

That the defendant is bound as principal by its signature to the written contracts for freight room and the Skinner substituted therein for the Kian Maru, must be the plaintiffs' construction of the contract of transportation, as it can hardly be contended that the defendant was bound in any way by the bills of lading signed by the owners, Skinner and Eddy, by the defendant as agent, in face of the. universal ruling that upon reason and authority it is held, without exception, that when a written contract *is made in the name of a principal and signed in his name by another as his agent,* it is not competent to show by parol evidence, in order to recover on the contract, that in signing it the one who purported to sign it as agent signed the name of the principal for his own benefit, with intention to bind himself. *Heffron* v. *Pollard,* 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764; *Martin* v. *Hemphill* (Tex. Com. App.), 237 S. W. 550, 20 A. L. R. 984.

This is beyond controversy when we consider Humphreys' remark to Glasscock, that "this Skinner that you have substituted for the Kian Maru is not the same age but well up in the twenties," and Glasscock said: "We will take care of that and make it all right;" thereby affirming his previous obligation. However, the majority opinion takes he said "we will take care of that and make it all right," from the context, "Mr. Glasscock, this Skinner that you have *substituted (potent word)* for the Japanese steamer is not of the same age of the Kian Maru, but she is well up in the twenties, and there is a stiff insurance additional rate," and makes that sentence a distinct, express and explicit promise to pay the excess insurance personally by the defendant. The context shows the obligation in regard

to insurance was already in existence, according to the plaintiffs, and that sentence was but an acknowledgement of the previous obligation. It is unmindful of the fact that the context violates the parol evidence in order to prove the alleged promises. The plaintiffs are consistent in regarding it only as a reaffirmance of the Kian Maru contract.

Assuming that the defendant was agent, this conversation, the majority opinion further takes, disassociated from the balance of the evidence and contracts, to be an independent pledge of the defendant's credit, contrary to the presumption of law that it was the language of the owners of the steamship, and contrary to the intent of Humphreys who made the contracts, and the construction of the plaintiffs and their counsel. Furthermore the opinion assumes without proof that there is therein an *express and explicit* promise on the part of the defendant to pledge its credit for the owners of the steamship, and that it clearly intended to assume personal liability. Having concluded that an independent collateral pledge of its personal responsibility had been made by the defendant for the owners of the Skinner, it holds inferentially that such a contract is an exception to the parol evidence rule. With great deference and respect for my brethren, I am obliged to assert that no such exception to the parol evidence rule can be found in any textwriter or decision.

The opinion cites 1 Mechem on Agency, section 1427, where Mr. Mechem says: "Still further, it is possible that the agent may bind his principal only upon the main or principal contract, and may bind himself only by a subsidiary contract collateral to the main one. Thus an agent selling his principal's goods, for example, may add to the contract of sale which he makes for his principal his own collateral agreement to warrant

the quality of the goods so sold. In such a case, of course, there is no room for election, because both are not bound to the same undertaking." The majority opinion then says: "The plaintiffs' case must stand upon this principle of law."

The above rule of the law of agency is certainly sound and the basic principle is that the distinct collateral agreement must be alleged and proven to rebut the presumption that the contract was that of the principal. In *Wilder* v. *Cowles*, 100 Mass. 487, and *Dahlstrom* v. *Gemunder*, 198 N. Y. 449, 92 N. E. 106, 19 Ann. Cas. 771, the courts required the distinct collateral agreement to be plead and proven. It means nothing more than that the principal and agent may be bound for the same transaction, but their agreement must be separate and distinct and the plaintiff can recover only on one of the agreements. The agent may become, by explicit agreement, surety for his principal.

Several of the cases cited in the majority opinion were cases where an agent selling farm machinery personally warranted the same to induce the purchaser to sign the written order to the manufacturer for the machinery which order contained all the warranty the manufacturer would give. The purchaser demanded the pledge of the agent's credit.

In the case of *Harvey* v. *Henry*, 108 Iowa 168, 78 N. W. 850, the agent had a special interest in the subject matter of the contract, and his oral promise was an additional inducement (or consideration) for making the written agreement, therefore, collateral thereto. But the facts are entirely different from the instant case, and the ruling is directly contrary to the law as laid down in *Slaughter* v. *Smithers, supra*.

In the case of *Hall* v. *Brown*, 36 Wis. 652, the oral promise of Brown, the agent, was made at the time of

the delivery of the written order for the cultivator and the notes, that the notes should be returned or he would pay the notes *if the cultivator was not satisfactory,*" is in principle somewhat analogous to *Whitaker* v. *Lane* and other cases cited by counsel for plaintiff, that is, the notes and order for the cultivator were delivered upon a condition precedent. This principle is not in- volved in the instant case. In every one of those cases the issue whether by an independent contract the agent expressly and explicitly pledged his credit for his principal, was one of fact for the jury. In none of them was the agent's contract in writing signed by both parties, so no question of the parol evidence rule could possibly have arisen, except possibly in *Harvey* v. *Henry,* 108 Iowa 168, 78 N. W. 850, which was a written con- tract of exchange of old machinery for new; the agent held the unpaid notes of the purchaser for the old machinery; the purchaser claimed the agent agreed to surrender the notes as part of the exchange; and the jury found against the contention.

This question could not have been submitted to the jury in Virginia in view of the law as laid down in *Slaughter* v. *Smithers, supra.*

The law of agency herein discussed can have no bearing on the instant case as the entire undertaking of the defendant was in writing signed by both parties, which showed plainly on its face what the defendant agreed to do for the owners of the steamer, and when the transportation contract was concluded, who were the owners.

The plaintiffs undertook to prove the defendant was the owner of the steamers and they dealt with it as such, and that it was legally bound to carry the cotton on the Kian Maru and substituted the Skinner for the former, and was thereby damaged. If that does not

contradict, vary and add to the written contracts under which the cotton was carried, then the parol evidence rule is no longer law in Virginia.

I am not unmindful that section 6365, Code 1919, requires the Supreme Court of Appeals to enter such judgment, decree or order as to the court shall seem right and proper. This relates to procedure in the appellate court and does not confer original jurisdiction on the court in violation of Constitution, 1902, section 88. *Duncan* v. *Carson,* 127 Va. 306, 103 S. E. 665, 105 S. E. 62. Certainly it does not authorize the appellate court to make a case different from the plaintiffs' pleadings, and then try and decide the same upon an issue never suggested or considered by the trial court and jury.