# Richmond.

## RICHMOND UNION PASSENGER RAILWAY COMPANY v. NEW YORK AND SEA BEACH RAILWAY COMPANY.

### DECEMBER 2, 1897.

### Absent, Cardwell, J.*

1. PROCESS—*Service on Corporation which has Ceased to Exist.*—Service of process on the late president of a corporation which has ceased to exist is sufficient, though the process might have been served by publication, as prescribed by section 1103 of the Code. The latter method is simply cumulative.

2. PLEADING—*General Issue—Special Pleas.*—It is not error to refuse to allow special pleas to be filed which set up no defences except such as can be presented under the general issue.

3. PRINCIPAL AND AGENT—*Ratification of Act of Unauthorized Agent.*— The act of an unauthorized agent, subsequently ratified by the principal, is as binding as though previously authorized.

4. EVIDENCE—*To whom Credit Extended—Plaintiff's Books of Original Entry.*—Where a defendant denies liability on a contract of which he has accepted the benefit, on the ground that credit was not extended to him, but to his alleged agent, the books of original entry of the plaintiff are admissible in evidence to show that the credit was extended to the defendant, and that the accounts sued on were charged to him at the time of the contract.

5. EVIDENCE—*Dealings Between two Corporations—Death of Agent of One.*—In an action by one corporation against another, the death of the agent who negotiated the contract on behalf of the defendant does not disqualify from testifying an agent of the plaintiff who did not negotiate the contract on its behalf, even if it disqualified the plaintiff's negotiating agent. A letter signed "A. by B." is A.'s letter.

6. EVIDENCE—*Contract for Reasonable Wages—Evidence of what is Reasonable.*—In an action on a contract whereby the plaintiff agrees to furnish to the defendant engineers "at a reasonable rate of wages," it is competent for the plaintiff to prove what would be a reasonable charge for the engineers furnished.

7. VARIANCE—*Declaration and Proof—Action against One, Account against Two.*—There is no variance between the allegation and the proof where the declaration avers a contract with the defendant, and the

---

*Judge Cardwell was prevented by sickness from sitting in any of the cases heard at Richmond, reported in this volume.

proof shows that the contract was made through an agent who disclosed the defendant as his principal. The account filed with the declaration in the case at bar was against the defendant and another, and is sufficient. The plaintiff, however, offered to strike out the name of the other, and it was not done because the defendant objected, and it must be now deemed sufficient.

8. CORPORATIONS—*Denial of Existence—Sufficiency of Affidavit.*—An affidavit which denies the existence of any such corporation as the defendant corporation at the time of the institution of plaintiff's suit, but does not deny the existence of such corporation at the time of the contract sued on, is not sufficient under section 3280 of the Code to put the plaintiff to proof of the existence of such a corporation.

9. PRINCIPAL AND AGENT—*Agent Contracting for Disclosed Principal—Presumption—Burden of Proof—Case at Bar—Prior Suit against Agent—Election.*—An agent who fully discloses his agency and the name of his principal, and contracts only as the agent of his principal, incurs no personal responsibility. While he may bind himself personally, the presumption is otherwise, and the burden of proof is on him who undertakes to establish the agent's personal liability. In the case at bar, it is clear that the agent contracted for a disclosed principal, and that credit was extended to the principal. The benefits of the contract were accepted by the principal, and there is no personal liability on the agent. The mere fact that the plaintiff instituted a suit on the contract against the agent, which suit has never been prosecuted, cannot relieve the principal from liability on the contract. In this case there were not "two concurrent debtors for the same debt."

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered March 27, 1895, in action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This was an action of *assumpsit* upon an open account, and the declaration contained only the common counts. An account was filed with the declaration, giving the items of the account, dates, and amounts. The heading of the account was as follows:

"December 14, 1888.

"Mr. Maurice B. Flynn,
        "Richmond Union Passenger Railway Co.
                "To New York & Seabeach Railway Co."

The evidence sufficiently appears in the opinion of the court.

*Wyndham R. Meredith,* for the plaintiff in error.

*Thomas N. Carter* and *Rutherford & Page,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is an action of *assumpsit* brought by the New York and Seabeach Railway Co. against the Richmond Union Passenger Railway Co. to recover the price of certain cars and engines hired by the plaintiff to the defendant.

During the progress of the trial the defendant company hereinafter referred to as the Richmond Company, took numerous bills of exception to the rulings of the court, and finally demurred to the plaintiff's evidence; whereupon the jury rendered a verdict in favor of the plaintiff upon which judgment was entered, and the Richmond Company applied for and obtained a writ of error and supersedeas from this court.

The Richmond Company, at the time of the institution of the suit had ceased to be a corporation, and was sued by virtue of section 1103 of the Code, which provides that "when any corporation shall expire or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property and debts due to it shall be subject to the payment of debts due by it, * * * * * * * * and such corporation may sue and be sued as before, for the purpose of collecting debts due to it, * * * * * * * * * prosecuting rights under previous contracts with it, and enforcing its liabilities. * * "

This statute was originally enacted about 1838, and appears in the Code of 1849. The revisors in 1887 added to it a provision that "notice to or process against such corporation to answer in any suit or civil proceeding shall be sufficiently served by publication thereof once a week for four successive weeks in

some newspaper published in the county or corporation, wherein the suit or proceeding is, or, if there be no newspaper published in said county or corporation, in a newspaper published in some other county or corporation in the State."

Service of process in this case was upon the late president of the company, one George E. Fisher. The contention of the Richmond Company is that the corporation having ceased to exist, there was no person upon whom process could be served; that the only method by which this corporation could be impleaded was by publication as prescribed in the statute; and, therefore, it appeared specially in the trial court, and moved to quash the summons.

If this contention be true, then from the time that this statute was enacted until its amendment, in 1887, there was a right without a remedy, for while such a corporation as is described in section 1103, and its property, were subject to the payment of its debts, there was no mode by which it could be brought before a court. We think this contention is untenable.

The first branch of the statute confers the right, and it is then provided that such corporation may sue and be sued, as before, for the purpose of collecting debts due to it, and enforcing its liabilities. Before it expired or was dissolved, or had ceased to exist, it could be brought into court by service of process upon its president, and, if by virtue of section 1103 it may be sued, as before, the conclusion seems irresistible that service upon its former president, is effectual to give jurisdiction.

In the case of *Finney* v. *Bennett*, 27 Gratt. 365, which was a suit by receivers of the Pittsylvania Savings Bank to recover debts due to it, it became necessary to consider the effect of a bill filed by Hall and others against the bank and its late president. The bank "had ceased to exist." The chancery suit was brought to wind up its affairs. The jurisdiction of the court of chancery in such a case was called in question in the law suit, and while the precise point here presented is not discussed in the opinion, it was necessary to the decision of the case. As has been said,

the jurisdiction of the chancery court was assailed. The discussion turns upon the power of a court of chancery to collect the debts due to, and administer the funds of, a defunct corporation at the suit of a simple contract creditor, whose claim had not been reduced to judgment; but the whole subject of jurisdiction was really involved, not only the jurisdiction of the court, but whether that jurisdiction had been properly acquired. The only evidence of personal jurisdiction over the bank is to be found in the personal service upon, and the answer of, its late president, who was made a party defendant. If the president could, by his voluntary act in answering the bill, give jurisdiction over the corporation of which he had been president, but which had ceased to exist, thereby terminating his relations to it, it cannot be disputed that it was equally competent to have acquired jurisdiction by service of process. It is conceded that the authority of this case is diminished by the circumstance that the point was not brought to the attention of the court, but it tends to show the practice, and is in aid of what appears to be the rational and natural interpretation of the statute, without which it would have been wholly unavailing, down to 1887, and in the absence of any contrary decision, may, with propriety, be cited.

It would have been entirely competent for the New York Co. to have proceeded by publication, as now provided by statute, but that method of service, we think, is additional to that which had theretofore existed, and which was properly resorted to in this case.

The second bill of exceptions is to the ruling of the court upon the motion of the Richmond Company to require the plaintiff to file a bill of particulars. We agree with the trial court in the opinion that the account filed with the plaintiff's declaration is in all respects a sufficient compliance with the law upon that subject.

The third, fourth and fifth bills of exceptions are to the action of the court in refusing the defendant leave to file certain special

pleas.  The contract sued upon in this case was the result of a
negotiation entered into between Alrick H. Mann, managing
director of the plaintiff company, and Morris B. Flynn, assuming
to act on behalf of the Richmond Company.

The contention of the Richmond Company set up in the pleas
under consideration is: First, that the plaintiff had given exclu-
sive credit to Morris B. Flynn, who had contracted as agent for
his principal; second, that the plaintiff had elected to sue the
agent Flynn, and thereby released the defendant; and, third,
that the said suit was still pending against Flynn in the State of
New York upon the same cause of action.

The defendant had already pleaded the general issue, and,
without at present considering the merits of the several conten-
tions thus suggested, it is sufficient to say that the trial court
did not err in refusing leave to file the several pleas objected to,
for the reason that the defence proposed to be made in each of
them would be presented under the general issue.   See *Campbell
& Co.* v. *Angus & Co.*, 91 Va. 438.

The sixth bill of exceptions is taken to the introduction of a
letter signed Alrick H. Mann, managing director, by James T.
Nelson, and addressed to Morris B. Flynn.   It is the beginning,
as far as this record discloses, of the negotiation between the
New York Company and the Richmond Company.   In excep-
tion No. 7, the reply signed Morris B. Flynn is objected to as
evidence, and the two may be considered together.   If these two
letters stood alone, there might be force in the objection to their
admissibility.   The first letter is addressed to Morris B. Flynn,
and the second letter is written by Morris B. Flynn, and it may
be conceded that he bore no such relation to the Richmond
Company as would bind it by force of any contract entered into
by him on its behalf, but it is obvious that he assumed in this
correspondence to act as its agent, and no authority need be
cited to show that the act of an unauthorized agent, subsequently
ratified by the principal, is as binding as though previously au-
thorized; nor can it be disputed that there is evidence in this

record tending to prove the ratification by the Richmond Company of all that was done by Flynn in this matter. See *Downer* v. *Morrison,* 2 Gratt. 243.

The eighth and eleventh bills of exceptions are to the introduction of the ledger of the New York Company. The Richmond Company denied its liability, among other reasons, because, as it alleged, the New York Company had extended credit not to it, but to Morris B. Flynn, and the ledger of the plaintiff was introduced to show that the accounts sued upon were charged to the defendant company upon its books of original entry at the time the cars and engines were furnished. See *Downer* v. *Morrison* 2 Gratt. 256; and *Addison* v. *Gandassequi,* 4 Tauton, at p. 574.

The ninth bill of exceptions is taken to the ruling of the court refusing the defendant's motion to exclude the evidence of James T. Nelson. The ground of this objection is that the contract sued on, if made at all, was entered into between Morris B. Flynn as the agent of the Richmond Company, and Nelson as agent of the New York Company, and that Flynn was dead.

We think this objection was properly overruled. The contract was between the plaintiff and defendant companies. It was in part at least negotiated by Flynn on behalf of the Richmond Company, and by Alrick H. Mann on behalf of the New York Company. The letter written by Mann is signed "Alrick H. Mann, by James T. Nelson," and is the letter of Mann, and not that of Nelson. How then could the death of Flynn affect Nelson's competency? We do not wish to be understood as admitting that Mann was disqualified as a witness by Flynn's death, but the question does not arise upon this record.

The tenth bill of exceptions is as to a question asked Jacobus, a witness for the plaintiff: "Is $3.50 a proper charge for a locomotive engineer." Answer. "Yes, sir." This question and answer were objected to upon the ground that the contract sued on spoke for itself as to what was and was not a proper charge, and that such evidence was therefore improper and

illegal. The contract provides that the plaintiff company shall furnish engineers to the defendant at its expense "at a reasonable rate of wages." The compensation is not expressed in the contract, and it was entirely proper to introduce testimony to show what would be a reasonable charge in that behalf.

The twelfth bill of exceptions is to the refusal by the trial court to exclude all the evidence offered by the plaintiff upon the ground of a variance between the declaration and the testimony, the defendant alleging that the claim of the plaintiff was upon its face against Morris B. Flynn, and not against the defendant company. An inspection of the declaration presents a complete answer to this objection. As has already been said, the bill of particulars is quite sufficient. It is on its face an account against Morris B. Flynn and the Richmond Union Passenger Railway Company; and the plaintiff, in order to remove all grounds of criticism to the mere form of the account, offered to strike out the name of Morris B. Flynn, which would have removed the difficulty, if any had existed, but, the defendant objecting, the court refused to permit it to do so, and for both these reasons its decision was free from error.

We are of opinion that none of the objections stated in the twelve bills of exceptions thus far considered are tenable.

The thirteenth bill of exceptions sets out all the evidence, to which the defendant demurred, and concludes with a motion that the court should enter judgment for the defendant, notwithstanding the verdict of the jury; and the fourteenth bill of exceptions states that all the evidence of the plaintiff had been introduced, and the defendant had demurred to it, the plaintiff joining therein, and the jury had rendered its verdict; that the defendant moved the court to set aside the verdict and judgment, and grant it a new trial, which motion the court overruled.

One of the points presented by these bills of exceptions is that the plaintiff in the trial court failed to show that the defendant was a corporation at the time of the bringing of this suit.

By section 3280 of the Code, where a corporation sues, or is

sued, it is not necessary to prove the fact of incorporation, "unless with the pleading which puts the matter in issue, there be an affidavit denying such incorporation." The affidavit relied upon by the defendant as a compliance with this section is in the following words:

"This day George E. Fisher appeared in person before me, George P. Draper, a notary public in and for the county of Monroe, State of New York, aforesaid, and made oath that he is the same Fisher on whom process in this action at law was served, and that, at the time of the institution of this suit, there was no such corporation as the Richmond Union Passenger Railway Company, and that the matter and things stated in the foregoing plea are true to the best of his knowledge and belief."

There is no denial on the part of the defendant that there was at some time such a corporation in existence in this State as the Richmond Union Passenger Railway Company, and it is not contended on behalf of the plaintiff that any such corporation existed at the institution of this suit. The claim of the plaintiff is based upon section 1103 of the Code, which imposes the liability upon the defendant company for any obligation it may have incurred during its corporate existence, though it thereafter expired, or was dissolved, or, from any cause, had ceased to exist. The affidavit may be, indeed was, perfectly true, and yet it in no respect affected the liability of the defendant, or the right of the plaintiff to recover against it, and was in no sense a compliance with section 3280.

It is said, however, that it appears from all the evidence that the plaintiff has failed to show any contract between it and the Richmond Company; that whatever contract was proved, was made and signed by Morris B. Flynn as an individual, acting for a disclosed principal, the Richmond Union Passenger Railway Company, and that the New York and Seabeach Railway Company had elected to hold Morris B. Flynn liable for said debt, and had brought suit against him in the courts of New York, as appears by the evidence; that this suit was an election

on the part of the plaintiff to hold Flynn liable, which election relieves the defendant corporation, since the plaintiff could not have two concurrent debtors for the same debt.

Where an agent makes a full disclosure of the fact of his agency, and the name of his principal, and contracts only as the agent of the named principal, he incurs no personal responsibility. Mechem on Agency, sec. 555. It is, of course, competent for the agent to bind himself personally, but the presumption is that he intends to bind only his principal, and the burden of proof is upon him who undertakes to establish the agent's personal liability. Sec. 558.

In this case the negotiation was commenced, as has already been said, by a letter from Alrick H. Mann, managing director of the plaintiff company, addressed to Morris B. Flynn, offering to charter certain cars and engines for use in Richmond in October and November, 1888, and naming the price. This letter is dated September 7, 1888, and on September 21, 1888, Morris B. Flynn wrote a letter to the plaintiff company, in which he says that the Richmond Union Passenger Railway Company "has requested me to accept your proposition to furnish the company with cars for use during the exposition at Richmond. * * * * * * "This is in acceptance of your proposition of September 7th. We will let you know at the time of inspection whether we want coal furnished by you, or whether we will want it put on at Jersey City." It thus appears at the very inception of this negotiation that Flynn informed the plaintiff company that he was acting for and on behalf of the defendant company, and it is proved that the engine and cars were, in pursuance of this contract, sent to the defendant company at Richmond, received, used, and enjoyed by it, and repaired, cared for, and returned by it to the owners. It is true that the plaintiff instituted suit against Flynn in the city of New York, but it is also true that it has never prosecuted that suit, and, presumably, for the reason

that upon the facts of the case, as disclosed in this record, it would have been impossible to hold Flynn or his estate responsible. There is not the shadow of foundation for the pretension that Flynn was in any way bound to the New York Company. It dealt with him as agent, and as the agent of a disclosed principal, and there is nothing to suggest that it was within the contemplation of any one, the plaintiff, or the defendant, or Morris B. Flynn, that personal liability should rest upon him.

The principle of law relied upon by the New York Company, as applied to this case, is that the New York Company could not hold both Flynn and the Richmond Company liable, because "it cannot have two concurrent debtors for the same debt." In such case it is put to an election, and the election to charge one of two concurrent debtors is an exoneration and release of the other. Upon this point there is no diversity of authority.

As to what act constitutes an election is the subject of conflict among the adjudicated cases. By some it is held that the bringing of the suit is an election; by others that the suit must be prosecuted to judgment, and by yet a third class that the judgment must be satisfied. We are not called upon to discuss, far less reconcile, these cases.

The necessary conditon, the indispensable term of the proposition, as stated by counsel for the Richmond Company, is that there shall be two concurrent debtors for the same debt. While it is true, we repeat, that the New York Company brought suit against Flynn, the agent, that suit was never prosecuted, presumably because Flynn was never for a moment liable for the debt. To decide that the ill-advised attempt to hold him under such circumstances constituted a defence to this suit, would be to say that the New York Company, having rendered services and furnished material to the Richmond Company, was remediless; that it could not recover of the defendant company, because it had sued its agent Flynn, and not of Flynn, because he had never contracted to be responsible in his individual capacity,

and had never received any benefit whatever from the contract. *Downer* v. *Morrison*, 2 Gratt. 256.

Upon the whole case we are of opinion that there is no error in the judgment of the Law and Equity Court of the city of Richmond, and it is affirmed.

*Affirmed.*