## CIRCUIT COURT OF FAIRFAX COUNTY

INOVA Health Systems Services, Inc.,
t/a Commonwealth Care Center

v.

Susan Bainbridge

July 19, 2010

Case No. CL 2009-3204

By Judge Leslie M. Alden

This matter came before the Court on the Complaint filed by Inova Health Systems Services, Inc., t/a Commonwealth Care Center ("Inova") seeking a judgment against Susan Bainbridge for care provided by Inova to Betty M. Callicotte-Meier. After considering the evidence presented at trial, supplemental argument submitted by Inova, common law principles of agency, provisions of the Social Security Act, and Va. Code § 32.1-138.3, the Court finds that Ms. Bainbridge cannot be held personally liable for the debts of Ms. Callicotte-Meier.

### Factual Background

On or about June 14, 2004, Ms. Callicotte-Meier was admitted to Inova's Commonwealth Care Center as a resident. Inova's Commonwealth Care Center is a nursing facility which provides long-term care to its residents. According to Inova, Ms. Callicotte-Meier was admitted pursuant to an Admissions Agreement ("Agreement") executed on June 14, 2004. The recitals of the Agreement state that the Agreement is between Inova, the Responsible Party, and the Resident. The recitals also list Ms. Callicotte-Meier as both the Responsible Party and the Resident.

However, the Agreement was not signed by Ms. Callicotte-Meier. The Agreement was signed by Ms. Bainbridge, who signed on the signature line titled Responsible Party. Ms. Bainbridge signed the Agreement on July 22, 2004, more than a month after Ms. Callicotte-Meier was admitted. It appears that, on July 7, 2004, Ms. Bainbridge was appointed Ms. Callicotte-Meier's General Power of Attorney ("POA"). The POA indicates that, at the time the POA was executed, Ms. Callicotte-Meier was unable to sign the POA and gave verbal consent in the presence of two witnesses.

The Agreement requires the Responsible Party and the Resident to use the Resident's income to pay Inova for the Resident's care. The Agreement further requires the Resident to appoint the Responsible Party as a Special POA to preserve the Resident's income and to promptly pay Inova; however, no Special POA was executed here. Although the Agreement requires the Resident to appoint the Responsible Party POA pursuant to a Special POA to preserve the Resident's income and pay Inova, Ms. Bainbridge was appointed pursuant to a General POA which did not provide specific directions to preserve income or provide payment to Inova. It is not clear whether appointing Ms. Bainbridge pursuant to a Special POA would alter the Court's analysis. Finally, the Agreement requires the Responsible Party to assist Inova in obtaining Medicaid for the Resident by providing the necessary financial information.

Ms. Callicotte-Meier resided at Inova's Commonwealth Care Center from June 14, 2004, through the date of her discharge on March 11, 2005. From November 2004 through March 11, 2005, Medicaid covered the cost of Ms. Callicotte-Meier's care. However, from July 2004 through September 2004, the cost of Ms. Callicotte-Meier's care was not covered by either her private insurance or Medicaid, so Ms. Callicotte-Meier was required to make payments from her own income. From July 2004 to September 2004, only one payment of $1,000 was made leaving a balance of $23,782.33.

During this time, Inova claims that Ms. Bainbridge was in control of Ms. Callicotte-Meier's finances and wrote numerous checks to herself and her friend instead of using Ms. Callicotte-Meier's income to pay for her care at Inova. In addition, Inova claims that Ms. Bainbridge failed to assist Inova in obtaining Medicaid for Ms. Callicotte-Meier by not providing the required financial information. After being unable to obtain Ms. Callicotte-Meier's financial information from Ms. Bainbridge, on December 21, 2004, an employee of Inova took Ms. Callicotte-Meier to the bank to obtain the necessary paperwork. At that time, the bank informed Ms. Callicotte-Meier that Ms. Bainbridge had closed her savings account and taken the balance of $2,351.44 as a cash withdrawal. After returning to Inova, Ms. Callicotte-Meier executed a Power of Attorney Revocation revoking Ms. Bainbridge's authority as POA.

Ms. Callicotte-Meier was eventually able to obtain Medicaid which covered the cost of her care retroactive to November 2004. However,

Inova never received payment for the $23,782.33 owed for July 2004 to September 2004. Ms. Callicotte-Meier passed away in August 2008, and Ms. Bainbridge qualified as administratrix of Ms. Callicotte-Meier's estate. Although Inova attempted to recover the amount owed from Ms. Callicotte-Meier's estate, the Commissioner of Accounts concluded that Ms. Callicotte-Meier's estate was insolvent.

Being unable to collect the balance due from Ms. Callicotte-Meier's estate, on March 5, 2009, Inova filed a Complaint against Ms. Bainbridge for breach of the Agreement in the amount of $23,782.33. Inova claims that, as the Responsible Party, Ms. Bainbridge had an independent contractual duty to use Ms. Callicotte-Meier's income to pay for her care and to assist Inova in obtaining Medicaid for Ms. Callicotte-Meier. Ms. Bainbridge filed an Answer, *pro se*, denying that she owed Inova for Ms. Callicotte-Meier's care. On March 24, 2010, a bench trial was held, at the conclusion of which the Court took the matter under advisement. The day after the trial, Inova's counsel submitted a letter to the Court, with a copy sent to Ms. Bainbridge, further explaining the legal theory upon which it contends Ms. Bainbridge is liable for breach of the Agreement. As Inova's counsel pointed out in its letter, no Virginia appellate courts have interpreted this type of Responsible Party contractual provision, which is commonly used in nursing home admission agreements.

## *Legal Analysis*

Inova's claim against Ms. Bainbridge rests upon the contention that, even though Ms. Bainbridge was Ms. Callicotte-Meier's agent, Ms. Bainbridge personally obligated herself to perform under the Agreement when she signed the Agreement on the signature line labeled Responsible Party. Inova cites certain provisions of the Social Security Act, Virginia Code § 32.1-138.3, and appellate courts from other jurisdictions as support for this contention. To determine whether Ms. Bainbridge obligated herself to perform under the Agreement, the Court must first examine the law of agency in Virginia.

A. *Agency*

Normally, "[t]he law indulges no presumption that an agency exists." *Raney v. Barnes Lumber Corp.*, 195 Va. 956, 966, 81 S.E.2d 578, 584 (1954). However, in this case, Inova admits that Ms. Bainbridge was Ms. Callicotte-Meier's agent pursuant to a POA. Therefore, the Court assumes that a principal-agent relationship existed between Ms. Callicotte-Meier and Ms. Bainbridge. When dealing with an agent, the general rule is that, "[w]here an agent makes a full disclosure of the fact of his agency, and the name of his principal, and contracts only as the agent of the named principal, he

incurs no personal responsibility." *Richmond U. P. R. Co. v. New York S. B. R. Co.*, 95 Va. 386, 395, 28 S.E. 573, 575 (1897). There are circumstances where an agent of a disclosed principal may personally bind himself such as where the agent enters into an independent, collateral agreement. *Harriss, Magill & Co. v. John H. Rodgers & Co.*, 143 Va. 815, 829, 129 S.E. 513, 517 (1925). However, "the presumption is that [an agent] intends to bind only his principal, and the burden of proof is upon him who undertakes to establish the agent's personal liability." *Richmond U. P. R. Co.*, 95 Va. at 395, 28 S.E. at 575.

Inova argues that Ms. Bainbridge personally obligated herself to perform under the Agreement; specifically, Inova contends that Ms. Bainbridge obligated herself to pay Inova from Ms. Callicotte-Meier's income and to assist Inova in obtaining Medicaid for Ms. Callicotte-Meier. To prevail under the common law principles of agency cited above, Inova has the burden of proving that Ms. Bainbridge intended to bind herself. However, under the facts of this case, Inova cannot meet its burden.

There is no dispute that, at the time Ms. Bainbridge signed the Agreement, she was Ms. Callicotte-Meier's agent pursuant to a POA. There is also no dispute that, at the time Ms. Bainbridge signed the Agreement, Inova knew Ms. Bainbridge was Ms. Callicotte-Meier's POA. Entering into the Agreement was within the scope of Ms. Bainbridge's authority pursuant to the General POA. The Agreement was entered into for Ms. Callicotte-Meier's benefit and her benefit alone. Moreover, Ms. Callicotte-Meier did not sign the Agreement herself, presumably, because she was physically unable to do so which is why she also had to give verbal permission to execute the POA. Therefore, without Ms. Bainbridge's signature, Inova would not have had a written contract with Ms. Callicotte-Meier. Finally, the Agreement identifies the two parties to the Agreement: Inova as Center and Ms. Callicotte-Meier as Resident and Responsible Party. The facts point to one conclusion: Ms. Bainbridge signed the Agreement as the agent and on behalf of Ms. Callicotte-Meier with no intention to personally bind herself.

Although the Agreement appears to contemplate a three-party contract between Inova, the Resident, and the Responsible Party, the Agreement in this case lists Ms. Callicotte-Meier as both Resident and Responsible Party. Inova focuses on the fact that Ms. Bainbridge signed on the signature line titled Responsible Party instead of the line titled Resident as evidence that Ms. Bainbridge personally assumed the duties of the Responsible Party. However, this argument is unpersuasive. The Agreement clearly lists Ms. Callicotte-Meier as the Responsible Party, and the Court must read the Agreement as written. *TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002). If the parties intended that Ms. Bainbridge be the Responsible Party, the parties would have listed her as the Responsible Party. To the extent there is any ambiguity, it must be

construed against Inova as the drafter of the Agreement. *Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 256 Va. 288, 291, 504 S.E.2d 849, 851 (1998).

Inova also focuses a great deal on Ms. Bainbridge's alleged misappropriation of over $8,000 of Ms. Callicotte-Meier's income while Ms. Bainbridge was POA. Although Ms. Bainbridge claims that all these charges were for legitimate costs incurred or services rendered for the care of Ms. Callicotte-Meier's cat, Spunky, the Court agrees that these expenses are extremely large and highly suspicious. Unfortunately, this Court cannot take action upon Ms. Bainbridge's alleged self-dealing because Inova is without standing to raise the issue. As Ms. Callicotte-Meier's POA, Ms. Bainbridge owed a fiduciary duty to Ms. Callicotte-Meier. Va. Code § 26-85. Even assuming that Ms. Bainbridge breached that duty by misappropriating Ms. Callicotte-Meier's income to her own personal use, only Ms. Callicotte-Meier or an individual identified in Virginia Code § 26-87 has standing to bring such a claim against Ms. Bainbridge. Va. Code § 26-87.

Therefore, under the common law and the facts of this case, Ms. Bainbridge could not be found liable because she was acting as an agent of a disclosed principal when she signed the Agreement with Inova. Still, Inova claims that the provisions of Social Security Act and Virginia Code § 32.1-138.3 require a different outcome.

## B. *Social Security Act*

Inova concedes that the Responsible Party provisions of the Agreement are "unusual." However, Inova argues that the form and substance of these provisions are allowed and even dictated by the Social Security Act.

As a nursing facility that accepts patients eligible for Medicaid, Inova is governed by certain provisions of the Social Security Act such as 42 U.S.C. § 1396r. Specifically, 42 U.S.C. § 1396r(c)(5)(A)(ii) provides that a nursing facility must "not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility." However, the statute does allow a facility to require "an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract *(without incurring personal financial liability)* to provide payment from the resident's income or resources for such care." 42 U.S.C. § 1396r(c)(5) (B)(ii) (emphasis added).

The main purpose of statutory construction is to determine the intention of the legislature. *Cousar v. Peoples Drug Store*, 26 Va. App. 740, 744, 496 S.E.2d 670, 673 (1998) (citations omitted). "When analyzing a statute, we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those

words as we interpret the statute'." *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). *See also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992) (holding "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). Courts may not add to a statute language which the legislature has chosen not to include. *County of Amherst Bd. of Supervisors v. Brockman*, 224 Va. 391, 397, 297 S.E.2d 805, 808 (1982). Likewise, Courts may not ignore language that the legislature has included. *BBF, Inc. v. Alstom Power, Inc.*, 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (quoting *Signal Corp. v. Keane Federal Systems, Inc.*, 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)).

It is clear from language in 42 U.S.C. § 1396r that Congress did not want nursing homes to force others not in privity, such as a resident's family member, to assume personal financial responsibility for the care of the resident. *See also* 104 H. Rpt. 651 (stating that purpose was to prevent financial exploitation of residents and their families). Furthermore, even though 42 U.S.C. § 1396r(c)(5)(B)(ii) allows a nursing facility to require a person with legal access to a resident's funds to sign an admission agreement, the statute is equally clear that a person does so without incurring personal liability. *See also* 56 FR 48826 (when such a person signs an admission agreement, "the person providing the guarantee assumes no personal liability"). Notwithstanding this prohibition on third-party personal liability, Inova argues that courts in other jurisdictions have allowed nursing facilities to obtain judgments against individuals who signed admission agreements pursuant to 42 U.S.C. § 1396r(c)(5)(B)(ii). For instance, Inova cites *Sunrise Healthcare Corp. v. Azarigian*, 76 Conn. App. 800, 821 A.2d 835 (2003).

Inova also cites *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 894 A.2d 584 (2006). However, *Walton* does not support Inova's position. In *Walton*, the Maryland Court of Appeals held that the defendant, as agent of the resident, could not be held personally liable for the debts of the resident even though the agent signed the admission agreement unless the agent voluntarily agrees to pay for the resident's care with the agent's own funds. *Id.* at 667, 894 A.2d at 598. Although Maryland has a more extensive regulatory scheme than Virginia, this Court finds the Maryland court's reasoning persuasive.

In *Sunrise*, the Connecticut Appellate Court found the defendant personally liable for her mother's care. *Sunrise*, 76 Conn. App. 800, 821 A.2d 835. Similar to the instant case, the defendant in *Sunrise* was the resident's POA and signed the admission agreement on the signature line titled Responsible Party. *Id.* at 804, 821 A.2d at 837-38. As the resident's POA, the defendant was in charge of the resident's income and used the income to pay for a private companion for the resident and to make additional transfers for estate planning purposes. *Id.* However, the transfers made by

the defendant and a transfer made by the resident's husband prior to the appointment of the POA made the resident to be ineligible for Medicaid. *Id.* Ultimately, the resident's income was insufficient to pay the costs of her care. *Id.*

Sunrise filed suit against the defendant for breach of contract and her duties as Responsible Party. *Sunrise*, 76 Conn. App. at 804, 821 A.2d at 837-38. First, the defendant argued that 42 U.S.C. § 1396r(c)(5)(B)(ii) prohibited personal liability. *Id.* The Connecticut court disagreed and reasoned that the defendant was not personally liable because she was only liable to the extent she had control over the resident's income, she failed to use the resident's income to pay for the resident's care, and the resident's income would have been sufficient to pay for the cost of her care but for defendant's misuse of the resident's income. *Id.* at 809, 821 A.2d at 840.

The defendant in *Sunrise* also argued that she was acting as the resident's agent when she signed the admission agreement and therefore could not be held personally liable. *Id.* at 812, 821 A.2d at 842. However, the trial court found that the defendant signed the admission agreement in both her capacity as the resident's agent and individually. *Id.* On appeal, the court only reviewed the trial court's decision for clear error. *Id.* Finding no clear error, the Connecticut court upheld the trial court's finding that defendant signed the contract individually and ultimately held defendant liable. *Id.*

This Court finds the analysis and conclusion of the Connecticut court unpersuasive. First, this Court is unmoved by the Connecticut court's explanation that the defendant was not being held personally liable because she had access to the resident's income. According to *Black's Law Dictionary*, personal liability is "[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets." *Black's Law Dictionary* (8th ed. 2004). The fact that a defendant at some point had access to the resident's income does not change the fact that plaintiff is seeking a judgment to be paid from the defendant's personal assets. Tellingly, the Connecticut court cites no authority for its proposition, and this Court finds none. Furthermore, this Court finds the instant case to be factually distinguishable because, unlike the trial court in *Sunrise*, this Court has determined that Ms. Bainbridge signed the Agreement only as the agent of Ms. Callicotte-Meier and not individually.

It appears that the Connecticut court was attempting to create a remedy where none exists. When an individual, who has legal access to a resident's income, signs an admission agreement, he or she does so "without incurring personal financial liability." 42 U.S.C. § 1396r(c)(5)(B)(ii). Although it may seem unusual that Congress would allow a nursing home to require an individual to sign an admission agreement but not give the nursing home recourse if that individual failed to make payments, it is

not for this Court to create such a remedy. If Congress wanted to create a remedy, it could have done so expressly, and if that were the case, Congress certainly would not have included the express language "without incurring personal liability."

Even if the prohibition on third-party personal liability was not clear from the plain language of the statute, Virginia law would require this Court to strictly construe the statute. As discussed previously, Ms. Bainbridge could not be found liable under the common law because she was acting as the agent of a disclosed principal. Therefore any statute that would allow such liability is in derogation of the common law. "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 613, 644 S.E.2d 72, 75 (2007); *Bostic v. About Women OB/GYN, P.C.*, 275 Va. 567, 576-77, 659 S.E.2d 290 (2008). Therefore, this Court must conclude that "without incurring personal liability" means no personal liability.

C. *Virginia Code § 32.1-138.3*

Nevertheless, Inova cites Virginia Code § 32.1-138.3 in support of its claim and argues that this section specifically allows Inova to recover against Ms. Bainbridge as responsible party. Virginia Code § 32.1-138.3 mimics, in part, the language of 42 U.S.C. § 1396r and provides:

> Any facility certified under Title XVIII or XIX of the United States Social Security Act shall not require a third party guarantee of payment to the facility as a condition of admission or of expedited admission to, or continued stay in, the facility. This section shall not be construed to prevent a facility from requiring an individual who has legal access to a resident's income or resources which are available to pay for care in the facility to sign a contract without incurring personal financial liability *except for breach of the duty to provide payment from the resident's income or resources for such care.*

(Emphasis added.)

The language of the Virginia statute is almost identical to the federal statutes with the exception of the final clause regarding a "duty to provide payment from the resident's income or resources for such care." Va. Code § 32.1-138.3. Given Congress's clear prohibition on third-party personal liability, there is a conflict between the federal statutes and the Virginia Code.

The Supremacy Clause of the United States Constitution makes "the Laws of the United States . . . the supreme law of the Land." U.S. Const.,

art. VI, cl. 2. The Supremacy Clause gives rise to the doctrine of federal preemption of conflicting state law and occurs in three situations. *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 98, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992). A federal statute may pre-empt state law by either (1) express pre-emption, using express or explicit pre-emptive language; (2) field pre-emption, where the scheme of federal regulation is so pervasive as to leave no room for supplementary state regulation; or (3) conflict pre-emption, where either (a) compliance with both state and federal law is impossible, or (b) a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* The "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Id.*

The conflict between 42 U.S.C. § 1396r(c)(5)(B)(ii) and Virginia Code § 32.1-138.3 falls with in the third category where compliance with both state and federal law is impossible. Because the Virginia Code appears to allow personal liability where the federal law prohibits it, it is impossible for any court granting relief under the Virginia Code, by finding someone personally liable, to be in compliance with the federal law. Therefore, to the extent that Virginia Code § 32.1-138.3 allows an individual, who has legal access to a resident's income and who signs an admissions contract, to be held personally liable, the Virginia Code is preempted by 42 U.S.C. § 1396r(c)(5)(B)(ii).

Notwithstanding the conflict between the federal statute and the Virginia Code, Ms. Bainbridge could not be held personally liable under the facts of this case because she signed the Agreement as an agent and she received no benefit for assuming personal liability.

## Conclusion

Accordingly, the Court finds that Ms. Bainbridge is not liable for breach of contract or liable for the outstanding debt owed to Inova for Ms. Callicotte-Meier's care.