# COURT OF APPEALS OF VIRGINIA
### Record No. 1881-24-1

GOURMET GANG, SUNSET BEACH RESORTS, LLC, ET AL.

v.

SUN SUNSET BEACH RV, LLC, ET AL.

Present: Judges AtLee, Chaney and Bernhard

Argued at Norfolk, Virginia

Opinion Issued May 26, 2026[*]

**FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY**
Lynwood W. Lewis, Jr., Judge

Richard S. Phillips (The Phillips Law Firm, on brief), for appellant.

Douglas E. Kahle (Zachary A. Handlin; Kinser, Leftwich & Kahle, P.C., on brief), for appellee.

**MEMORANDUM OPINION BY**
**JUDGE RICHARD Y. ATLEE, JR.**

Gourmet Gang, Sunset Beach Resorts, LLC and The Gourmet Gang, Inc. (collectively, "Gourmet Gang") appeal the circuit court's orders sustaining pleas in bar to their complaint. Gourmet Gang contends that the circuit court wrongly concluded that Gourmet Gang could not enforce its lease against Sun Sunset Beach RV, LLC ("Sun Sunset Beach"), arguing that Sun Sunset Beach was an intended party and that it was simply a misnomer in the lease that named a different entity. Gourmet Gang also argues that Code § 11-2, the Statute of Frauds, does not bar enforcement of the lease and that the defendants were estopped from asserting this defense due to Gourmet Gang's detrimental reliance. Although the circuit court correctly decided the breach of contract claim, the current record is insufficient to support its ruling on the remaining claims.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

We therefore affirm in part, reverse in part, and remand the case to the circuit court for further proceedings consistent with this opinion.[1]

BACKGROUND

Gourmet Gang is a limited liability company providing food and beverage services in Virginia. In March 2018, Mia Guinan, the owner and sole member of Gourmet Gang, negotiated with representatives of an entity that she believed owned the Sunset Beach Resort property in Cape Charles, Virginia for her company to operate a food and beverage service on the premises of the resort. According to Guinan, the representatives contacted her to propose the business arrangement. They then drafted and supplied her with a written lease, which she reviewed with counsel.

The lease named Gourmet Gang as the lessee and an entity called "Sunset Beach Resort, LLC" (Sunset Beach Resort) as the lessor.[2] Under the lease, Gourmet Gang would rent a restaurant, two deck facilities, and a beach facility on the resort premises to operate its business. The lease provided for an initial rental term of one year but permitted Gourmet Gang to renew the lease on a year-to-year basis for three more years, contingent on satisfactory performance and timely notice to the landlord. The lease further provided that, after the first four years, Gourmet Gang could renew the lease for two additional five-year terms subject to the same conditions if it was not in default of the lease. The lease required Gourmet Gang to pay monthly rent and adhere to specified hours of operation.

---

[1] Appellees filed two motions with this Court. The first asked the Court to dismiss Gourmet Gang's first assignment of error. The second motion asked the Court to issue a rule to show cause. Both those motions are denied. Gourmet Gang's motion to amend the first assignment of error is likewise denied.

[2] Gourmet Gang discovered upon later investigation that Sunset Beach Resort, a limited liability company formerly registered to do business in Virginia, was defunct when the lease agreement was signed.

Guinan traveled to a corporate office in Ocean City, Maryland to sign the lease. At the meeting, Dean Geracimos informed Guinan that Sunset Beach Resort was the owner of the resort property and that he was authorized to execute the lease for the owner. In fact, Geracimos is an employee of Bluewater Development Corporation ("Bluewater"), a hospitality company that provides onsite management services and personnel to the resort. The parties executed the lease, with Guinan signing on behalf of Gourmet Gang and Geracimos signing on behalf of Sunset Beach Resort. Guinan claimed that Geracimos did not mention any other entities connected with the property.

Over the next four years, Gourmet Gang operated its business on the leased premises and made all monthly rental payments due. During the tenancy, Bluewater's onsite managers oversaw all operations related to the premises and communicated with Gourmet Gang on the landlord's behalf. Guinan alleged that the managers conveyed to her that the landlord wished to recoup part of the premises that had been leased to Gourmet Gang to host weddings and other events.

In October 2021, Guinan notified Tony Nichols, a Bluewater manager, that she had opted to renew the lease for a five-year term. Nichols communicated that the landlord did not wish to "move forward" with a five-year renewal and met with Guinan to renegotiate the lease agreement. Nichols proposed revised lease terms of one-year potential extensions instead of two five-year extensions. After further negotiations during which Guinan proposed her own lease revisions, Nichols informed Guinan that "Sun w[ould] never agree" to her proposed lease terms and that Bluewater's onsite manager would be changing the locks on the premises. Despite this communication, however, Bluewater did not take immediate action to block Gourmet Gang's access to the premises.

In March 2022, an attorney for Gourmet Gang sent a letter to the landlord's attorney advising that Gourmet Gang planned to open for business when the new term began on April 1, 2022, unless the landlord changed the locks. The attorney advised that, if locked out of the

premises, Gourmet Gang would immediately sue the landlord for breach of contract. The landlord's attorney responded that the landlord would not renew the lease, did not wish to continue a business relationship with Gourmet Gang, and was still planning to change the locks on the premises. The landlord's attorney claimed to represent Bluewater and another entity called "Sun-Sunset Beach, LLC" in the dispute over the lease. On March 28, 2022, the landlord's attorney communicated that the locks had been changed.

Gourmet Gang sued Sun Sunset Beach and Bluewater for breach of contract, tortious interference with contract, business conspiracy,[3] and defamation. Sun Sunset Beach, a limited liability company based in Michigan, is the current owner of the resort property. Gourmet Gang alleged in the complaint that Sun Sunset Beach and Bluewater had breached the lease by refusing to renew the lease for a five-year term and interfering with Gourmet Gang's quiet enjoyment of the premises.

Gourmet Gang further alleged that Bluewater had persuaded Sun Sunset Beach to breach the lease and that the two entities had conspired to deprive Gourmet Gang of its contractual rights. In support of the conspiracy claim, Gourmet Gang alleged that Bluewater—acting in concert with the landlord— attempted to force Gourmet Gang to accept new lease terms, prepared the leased premises for a new business venture, and ejected Gourmet Gang from the premises after negotiations failed. Gourmet Gang also asserted that Bluewater had acted out of spite and ill will against Guinan, as evidenced by its employees' communications. Gourmet Gang alleged that the defendants' actions caused injury in the form of lost profits and business opportunities and that it

---

[3] Codes §§ 18.2-499 and 18.2-500 provide that any two persons who take concerted action to willfully and maliciously injure another's business are guilty of business conspiracy and entitle the injured party to seek civil relief.

- 4 -

had relied on the tenancy to build its brand, gain public exposure, and increase sales. Gourmet Gang later amended the complaint to add two more entities as defendants.[4]

The defendants filed pleas in bar to the amended complaint, arguing that Gourmet Gang's claims must be dismissed because none of the named defendants was a party to the lease and all the claims depended on the existence of a valid lease between the parties. The defendants stated that the lease only identified Sunset Beach Resort, an entity not named in the complaint, as the lessor of the resort property. Gourmet Gang responded that the misnomer in the lease did not invalidate the agreement because the parties had clearly intended for Sun Sunset Beach, the current property owner, to be the true party to the lease. Gourmet Gang also argued that the misnomer did not release the defendants from their contractual obligations because they had drafted the lease and abided by it without objection.

The parties conducted depositions. Nichols testified that he had been employed as an operations manager for Bluewater since 2018. He explained that Bluewater was owned by a parent company called Sun Communities, which Nichols colloquially referred to as "Sun." Nichols had never heard of either Sun Sunset Beach or Sunset Beach Resort and believed Sun Communities was the owner of the resort property. Nichols did not know which entity received Gourmet Gang's rental payments. Nichols confirmed that he had attempted to renegotiate the lease with Gourmet Gang and read into the record a communication between himself and Guinan that reflected that he believed he had been acting on behalf of Sun Communities.

The circuit court held a hearing on the defendants' pleas in bar. The parties reiterated the arguments in their pleadings and did not initially adduce any evidence. At the conclusion of the

---

[4] Gourmet Gang amended the complaint to add Blue Water Hospitality Group, LLC and Blue Water Hospitality Management, LLC as defendants because it believed that one of those entities, rather than Bluewater Development Corporation, employed the onsite manager who changed the locks.

hearing, the circuit court stated that it had reviewed the pleadings in the case and found that the lease was "fundamental" to Gourmet Gang's claims. The court also concluded that only Sunset Beach Resort had been named as a lessor in the lease and that defendant Sun Sunset Beach was not a party to the lease. The court agreed with the defendants that the omission of Sun Sunset Beach from the lease had not merely been the result of a misnomer. Given these findings, the circuit court sustained the defendants' pleas in bar and dismissed the amended complaint without prejudice. The court granted Gourmet Gang leave to amend the complaint for a second time.

Gourmet Gang's second amended complaint added Sunset Beach Resort and Geracimos as defendants. Gourmet Gang asserted claims for breach of contract, tortious interference with contract, business conspiracy, and fraud. Gourmet Gang alleged that Geracimos had engaged in purposeful actions to mislead the company into entering the lease and that the corporate defendants shared liability for his alleged misrepresentations because he had been acting on their behalf.

The defendants filed a plea in bar to the second amended complaint. The defendants argued that the Statute of Frauds[5] barred enforcement of the lease because none of the corporate defendants or their authorized agents had signed the lease agreement and, absent an enforceable agreement, Gourmet Gang's claims for breach of contract, interference with contract, and conspiracy must be dismissed. The defendants also asserted that the fraud claim was barred by the statute of limitations. Gourmet Gang responded that the lease agreement satisfied the Statute of Frauds because it had been signed by an agent with actual or apparent authority to act on behalf of Sun Sunset Beach. Gourmet Gang also argued that the doctrine of equitable estoppel prevented the defendants from asserting the Statute of Frauds because Gourmet Gang had detrimentally relied on the lease agreement.

---

[5] Code § 11-2(6) provides that no action shall be brought upon a contract to lease real property for more than one year unless the contract is in writing and signed by the party to be charged or the party's agent.

At a hearing on the plea in bar, the parties presented arguments on the Statute of Frauds and Gourmet Gang reiterated its argument that the misnomer in the lease did not render the agreement unenforceable because Sun Sunset Beach was the intended party to the lease and had benefited from the lease for four years. The defendants stated that Sun Sunset Beach was not the lessor of the resort property and asked to adduce evidence on the identity of the actual lessor. Although initially objecting, Gourmet Gang later stipulated to the evidence. The defendants submitted documents[6] showing that Sunset Beach Investments, LLC ("Sunset Beach Investments"), an entity not named in the complaint, had leased the property from the owner at the time of the lease with Gourmet Gang. The documents also showed that Sunset Beach Investments had an address in Ocean City, Maryland. After submitting the evidence, the defendants asked the circuit court to dismiss Gourmet Gang's claims with prejudice.

Gourmet Gang requested leave to amend the complaint again, arguing that the defendants had failed to reveal the adduced facts in discovery. The circuit court denied the request. Gourmet Gang also argued that Sun Sunset Beach was the correct entity to sue because the evidence showed it was the current owner of the resort property and therefore the intended party to the lease. The circuit court noted that Sun Sunset Beach was a distinct entity from Sunset Beach Investments and that the evidence showed that the latter had accepted the rental payments. Gourmet Gang disputed that the rent checks had been made payable to Sunset Beach Investments, but the circuit court responded that it had stipulated to documents showing payments went to Sunset Beach Investments.

---

[6] The documents included deeds of conveyance showing that Sunset Beach Investments had purchased the property from Sunset Beach Resort in 2015 and then sold it to Sun Sunset Beach in 2016; a lease executed in 2016 under which Sun Sunset Beach leased the property back to Sunset Beach Investments for a period of 20 years; and bank statements and deposit slips showing that Sunset Beach Investments had deposited the rental payments made by Gourmet Gang.

The court declined to rule on the plea in bar at the conclusion of the hearing, stating that it needed more time to "mull" over the issues before making a ruling.

After the hearing, Gourmet Gang moved the circuit court to correct the misnomer in the second amended complaint. Gourmet Gang submitted an affidavit in support of the motion in which it attested that it had made all rent checks payable to "Chesapeake Bay KOA," the name of the resort property, and had given the checks to Bluewater managers to transmit to the landlord. By letter opinion, the circuit court sustained the plea in bar to the breach of contract, interference with contract, and conspiracy claims, holding that the Statute of Frauds barred enforcement of the lease. The court also sustained the plea in bar to the fraud claim after finding that the statute of limitations barred the claim. By final order entered in October 2024, the circuit court sustained the plea in bar for all defendants and dismissed Gourmet Gang's claims with prejudice. The court did not grant leave to amend or address the motion to correct the misnomer. Gourmet Gang timely appealed.

ANALYSIS

Gourmet Gang argues on appeal that the circuit court erred by sustaining the pleas in bar to its breach of contract, tortious interference with a contract, and conspiracy claims because the evidence established that Sun Sunset Beach was the intended party to the lease, but for a misnomer. It also argues that the lease satisfied the Statute of Frauds because it was in writing and signed by an agent with actual or apparent authority to act on Sun Sunset Beach's behalf. Finally, it asserts that its material detrimental reliance on the lease equitably estopped the defendants from raising a Statute of Frauds defense.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* Where, as here, the "parties present evidence on the plea ore tenus, the circuit

court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* (quoting *Hawthorne*, 279 Va. at 577).

A. *The circuit court properly sustained the pleas in bar to the breach of contract claim.*

"[A] misnomer occurs where the proper party to the underlying action has been identified, but incorrectly named." *Marsh v. Roanoke City*, 301 Va. 152, 155 (2022) (alteration in original) (quoting *Richmond v. Volk*, 291 Va. 60, 64 (2016)). "[A] misnomer in a corporate name does not invalidate a contract when it is clear what corporation the parties intended, and 'such a mistake may be . . . shown in evidence, upon the general issue.'" *Lataif v. Com. Indus. Constr., Inc.*, 223 Va. 59, 63 (1982) (second alteration in original) (quoting *Culpeper Agric. and Mfg. Soc. v. Digges*, 27 Va. (6 Rand.) 165, 167 (1828)). Where a misnomer resulted in the omission of a corporate defendant from a contract, the contract may still be enforced *against* the defendant if the evidence in the record establishes that it was the intended party to the contract. *See id.* (holding that an assignment agreement was enforceable against a corporate defendant despite a mistake in the defendant's name because the defendant acknowledged the debt without complaint).

"Misjoinder, on the other hand, arises when 'the person or entity identified by the pleading was not the person by or against whom the action could, or was intended to be, brought.'" *Marsh*, 301 Va. at 155 (quoting *Richmond*, 291 Va. at 64). "Whether the incorrect identification of a party is a misnomer or a misjoinder is a question of law reviewed de novo." *Hampton v. Meyer*, 299 Va. 121, 127 (2020).

Here, the evidence belies Gourmet Gang's assertion that Sun Sunset Beach was the intended lessor under the lease. Gourmet Gang stipulated to evidence showing that a different entity, Sunset Beach Investments, had leased the property from the owner since 2016 and was

the only entity with authority to lease the property to Gourmet Gang when Gourmet Gang executed the agreement.[7] The record also shows that Sunset Beach Investments, not Sun Sunset Beach, deposited the rent checks. Guinan's claim that she signed the lease in Ocean City, Maryland, where Sunset Beach Investments has an office, further demonstrates that Sunset Beach Investments was the intended party to the lease. Nor does the record support Gourmet Gang's claim that Sun Sunset Beach was the entity that had attempted to renegotiate the lease. Rather, Nichols testified in his deposition that he was unaware of Sun Sunset Beach and believed that he had negotiated for Sun Communities. Nor does the Bluewater defendants' participation in executing the lease alter this conclusion. Geracimos signed the lease as the representative of Sunset Beach Resort, an entity distinct from the named defendants, which binds only the undisclosed or misnamed principal. *See Richmond Union Passenger Ry. Co. v. N.Y. & Sea Beach Ry. Co.*, 95 Va. 386, 395 (1891) ("Where an agent makes a full disclosure of the fact of his agency, and the name of his principal, and contracts only as the agent of the named principal, he incurs no personal responsibility.").

Given this evidence and the required deference to the circuit court's fact-finding, we conclude that none of the named defendants was the intended lessor. Sun Sunset Beach was not the intended party to the lease—Sunset Beach Investments apparently was. Thus, the circuit court did not err in sustaining the pleas in bar to the breach of contract claim because none of the named defendants had signed the lease or was intended to be on the lease.[8] *See Hawthorne*, 279

---

[7] The 2016 lease agreement between Sun Sunset Beach and Sunset Beach Investments authorized the latter to execute rental agreements with concessionaires without obtaining Sun Sunset Beach's consent.

[8] Gourmet Gang's Statute of Frauds and equitable estoppel arguments fail for the same reason. Code § 11-2, the Statute of Frauds provision, requires certain contracts to be "in writing *and signed by the party to be charged or his agent*." (Emphasis added.) Gourmet Gang's equitable argument is likewise premised on a contractual relationship with a named defendant. *See T. v. T.*, 216 Va. 867, 871-73 (1976) (holding that a defendant may be equitably estopped

Va. at 577. Instead, there was a misjoinder of defendants, despite two attempts at amended pleadings.[9] *See Marsh*, 301 Va. at 155. Therefore, the circuit court properly dismissed the breach of contract claim.

B. *The circuit court erred by sustaining the pleas in bar to the tortious interference with a contract and conspiracy claims against the Bluewater defendants.*

Tortious interference with contract is an "intentional tort[] predicated on the common law duty to refrain from interfering with *another*'s contractual and business relationships." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 218 (2014) (emphasis added). A claim of tortious interference with contract thus necessarily applies to third parties outside the contractual relationship, not the parties to the contract. *Francis Hosp., Inc. v. Read Props., LLC*, 296 Va. 358, 364 (2018). To make a prima facie showing of tortious interference, a plaintiff must demonstrate: 1) the existence of a valid contractual relationship with an entity other than the defendant against whom the charge is brought; 2) the defendant's knowledge of the contractual relationship; 3) a breach or termination of the contract caused by the defendant's purposeful interference; and 4) resulting damage or injury. *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 558-59 (2011).

On the first element, the initial evidence supports a contract between Gourmet Gang and Sunset Beach Investments, a non-party to the complaint. Gourmet Gang signed a written lease, intending to lease the premises from Sunset Beach Investments. Further, the written lease agreement memorialized the essential terms of the agreement, including the five-year lease

---

from asserting the Statute of Frauds if the plaintiff detrimentally relied on an oral agreement with the named defendant). Because none of the defendants were parties to the lease, these requirements are not satisfied.

[9] We do not review the circuit court's denial of Gourmet Gang's request for further leave to amend the complaint because Gourmet Gang does not assign error to that ruling on appeal. *See* Rule 5A:20(c), (e).

extensions at issue. Sunset Beach Investments had authority to lease the premises because it had signed a master lease with the property's new owner. And Sunset Beach Investments received and cashed the rent payments that Gourmet Gang sent each month.[10] Thus, the record contains evidence of an agreement between Gourmet Gang and Sunset Beach Investments.

The record also conveys the Bluewater defendants' knowledge of the contractual relationship. Geracimos, a Bluewater employee, signed the lease. And during the tenancy, Bluewater's onsite managers maintained the leased premises, communicated with Gourmet Gang apparently on the landlord's behalf, accepted rent checks to transmit to the landlord, and attempted to renegotiate the terms of the lease for the landlord. The evidence showing a contractual relationship with Sunset Beach Investments and Bluewater's knowledge of the relationship, together with Gourmet Gang's allegation of an injurious breach, suggests a prima facie claim for tortious interference with contract. *Id.*

As the record supports a potential claim for tortious interference with contract, the business conspiracy claim may also proceed against the Bluewater defendants.[11] Under Code § 18.2-499, two or more entities engage in a business conspiracy when they take concerted action to injure another's business, act with legal malice, and an injury results. *See Dunlap*, 287 Va. at 214. The entities involved in the conspiracy must be distinct from one another and not

---

[10] Although Sunset Beach Investments did not sign the lease, there is evidence that Sunset Beach Investments either directly or indirectly represented that it would lease the property to Gourmet Gang for a term of 14 years, assuming certain conditions were met, and that Gourmet Gang detrimentally relied on those representations. "[A] party may be estopped by his statements or conduct from pleading the statute of frauds." *T. v. T.*, 216 Va. at 872. Although we cannot speculate on what may be established at trial, at this stage of the proceedings, a factfinder could conclude that Gourmet Gang entered an enforceable contract with Sunset Beach Investments.

[11] But the conspiracy claim against Sun Sunset Beach cannot proceed because the record evidence does not show that Sun Sunset Beach conspired with the Bluewater defendants to breach the lease.

wholly owned subsidiaries, as "a single entity cannot conspire with itself." *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 36 (1996). Additionally, any conspiracy claim must allege a tortious "unlawful act" other than breach of contract. *Dunlap*, 287 Va. at 216-17.

Here, Gourmet Gang successfully alleged all the requisite elements of a business conspiracy because it alleged that two or more distinct Bluewater entities[12] acted in concert to injure Gourmet Gang's business, that Bluewater acted out of spite and ill will, and that damages resulted. Further, Virginia courts have held that tortious interference with contract is an "unlawful act" predicating a business conspiracy claim. *Id.* at 218.

But agents cannot tortiously interfere with their principals' contracts or conspire with their principals to injure another's business. *Fox v. Deese*, 234 Va. 412, 428-29 (1987) (holding that defendants acting within the scope of their employment could not intentionally interfere with their employer's contract or conspire with the employer to breach the contract). At this stage, it is unclear whether the Bluewater defendants acted as agents, and within the scope of their agency, for Sunset Beach Investments. The record only establishes that Geracimos worked for Bluewater and that he thought he signed the lease as an agent for Sunset Beach Resort. And Nichols worked for Bluewater, and he thought he renegotiated the lease for Sun Communities. Thus, more factual development on the agency issue was necessary before the circuit court could determine whether the Bluewater defendants acted on behalf of Sunset Beach Investments.

By sustaining the pleas in bar to the tortious interference and conspiracy claims without a sufficient record to resolve the factual issues underlying the claims, the trial court incorrectly "short-circuited litigation pretrial and has decided the dispute without permitting the parties to

---

[12] Bluewater Hospitality Management, LLC is owned by Bucor Holdings, LLC, a Delaware-based company, while Bluewater Development Corporation is owned by Todd Burbage and John Burbage, Jr., neither of whom are owners in Bucor. The two entities are therefore distinct from one another and not subsidiaries.

reach a trial on the merits." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993) (quoting *Renner v. Stafford*, 245 Va. 351, 352 (1993)). "We have often warned of the dangers of 'short-circuiting' litigation, because in doing so, a trial court 'deprives a litigant of his day in court and deprives this Court of an opportunity to review a [more] thoroughly developed record on appeal.'" *Walsh v. Bennett*, 260 Va. 171, 176 (2000) (alteration in original) (quoting *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 95 (1997)). Where additional factual development is necessary to resolve the sufficiency of a claim or defense, a circuit court's decision on the issue is premature. *See Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 476-77 (2009) (holding that a circuit court's decision to strike a waiver defense short-circuited the fact-finding process).

The current record appears to support claims for tortious interference with contract and business conspiracy against the Bluewater defendants, but more fact-finding is necessary to determine the sufficiency of the claims. *See id.* We therefore conclude that the circuit court erred by dismissing those claims at this early stage of litigation.

CONCLUSION

The circuit court properly sustained the defendants' pleas in bar to the breach of contract claim, as the evidence does not show that Gourmet Gang entered a contract with the named defendants. But the circuit court erred by sustaining the pleas in bar to the tortious interference with contract and business conspiracy claims against the Bluewater defendants, because the current record suggests a contractual relationship with Sunset Beach Investments, Bluewater's knowledge of and interference with the relationship, and the elements of conspiracy. Accordingly, we affirm the circuit court's dismissal of the breach of contract and conspiracy claims against Sun Sunset Beach but reverse its dismissal of the tortious interference with

contract and conspiracy claims against the Bluewater defendants.  We remand this case to the

lower court for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*